LINTON and Wife *v.* FIRST NAT. BANK OF KITTANNING and others.

*(Circuit Court, W. D. Pennsylvania. March 11, 1882.)*

1. NAME—RIGHT TO CHANGE.

At common law a man may lawfully change his name, and he is bound by any contract into which he may enter in his adopted or reputed name, and by his known and recognized name he may sue and be sued.

2. PLEADING—INSUFFICIENT PLEA.

In a suit by husband and wife, in her behalf, a plea which alleges that the surname in which they sue is not the husband's real name, but which does not deny that it is his known and recognized name, is bad.

3. GUARDIAN—APPOINTMENT—SCOPE OF AUTHORITY UNDER.

An appointment by an orphans' court in Pennsylvania of a guardian for certain designated estates of a non-resident minor, lying within the jurisdiction of the court, does not operate so as to constitute the appointee the general guardian of all the estates of such minor within the commonwealth, but the guardianship is limited to the particular estates mentioned in the petition and order.

4. TRUST DEED—RIGHTS OF BENEFICIARY—MINORITY—EFFECT OF MARRIAGE.

Where B., in consideration of love and affection for his granddaughter, a minor, set apart for her separate use certain bank stock, the trust deed providing that she should not " sell, dispose of, or charge" said stock or its dividends without the consent and concurrence of such guardian or trustee as the proper court might appoint for her, but giving her " the full right to use and enjoy" for her " own use" and that of her family all the dividends, the *cestui que trust* having attained her twentieth birthday, and being then married, *held,* that she was entitled to receive the dividends directly from the bank without the intervention of either guardian or trustee.

In Equity.

*H. & G. C. Burgwin, J. P. Colter,* and *Geo. W. Guthrie,* for complainants.

*D. T. Watson,* for defendants.

ACHESON, D. J. This is a suit in equity against the First National Bank of Kittanning, Pennsylvania, and James B. Neale. The bill describes the plaintiffs as Adolphus Frederick Linton and Phebe R. E. Elwina Linton, his wife, aliens, subjects of her Britannic Majesty Queen Victoria, domiciled in the kingdom of England. The parents of the wife were John B. Finlay and Jane B., his wife, who was a daughter of James E. Brown, all of whom were resident at Kittanning, Armstrong county, Pennsylvania. Jane B. Finlay died December 30, 1876; James E. Brown died November 27, 1880. The bill alleges that Miss Finlay was born February 18, 1862, and was married December 10, 1878, at the British embassy at Paris, to the plaintiff Adolphus Frederick Linton, a British subject.

On the tenth of August, 1865, the said James E. Brown, in consideration of love and affection for his said daughter and granddaughter, by an instrument of writing gave and assigned to their use 610 shares of the capital stock of said bank, upon the condition that the same should remain in his name and under his control as trustee during his life, for the sole and separate use of his said daughter during her life, "and after her death for the exclusive use of her said daughter, Phebe R. E. Elwina," free from all debts and contracts of their husbands, respectively; neither to sell, dispose of, or charge the said stock, "its accretions and accumulations," without his consent, or that of such guardian or trustee as the proper court should appoint for his said granddaughter after his death: "provided, however, that the said Jane, during her life, and the said Phebe R. E. Elwina, after the death of the said Jane, shall have the full right to use and enjoy for their own use, and that of their respective family or families, all or any part of the accretions or accumulations of said capital stock, and that the receipt of either of said beneficiaries, while being such, shall be a full discharge of myself or guardian or trustee as aforesaid for such accretions or accumulations, in whole or in part, as the same shall be received by them."

It appears that on April 1, 1878, the petition of Miss Finlay, then residing in the state of New York, was presented to the orphans' court of Armstrong county, Pennsylvania, for the appointment of a guardian. That petition (omitting the address and signature) is in these words:

"The petition of Phebe R. E. Elwina Finlay, at present a resident at Clifton Springs, in the county of Ontario and state of New York, represents that your petitioner is a minor child of John B. Finlay, Esq., and of Mrs. Jane B. Finlay, lately deceased; that she is possessed of real and personal estates, in right of her said mother, lying within the jurisdiction of said court, and has no guardian to care for her said estates. She therefore prays the said court to appoint James B. Neale, Esq., a guardian for the purpose aforesaid. The said James B. Neale is neither executor nor administrator of the estate from which my property is derived.

"*Clifton Springs, March* 29, 1878."

Upon this petition the court made this order, viz.:

"1 April, 1878, presented in open court, and, on due consideration, James B. Neale appointed guardian, as prayed for. Bond in $40,000; and J. E. Brown approved as surety.

"By the court."

It is shown that after the decease of Jane B. Finlay, and until the death of James E. Brown, the dividends on said stock, by directions of Mr. Brown, were placed upon the books of the bank to the credit of his granddaughter Elwina, both before and after her marriage, and paid out upon her checks or drafts. On February 6, 1879, Mr. Brown wrote in the dividend book, opposite the 610 shares, "Place to the credit of Elwina F. Linton. J. E. Brown;" and in two other instances he made similar entries. But the dividends declared since Mr. Brown's death have not been paid, but are withheld by the bank, the said James B. Neale having notified the bank to pay them to no one but himself; he claiming, under the above appointment, to be the general guardian of Mrs. Linton's entire estate.

The case is now before the court upon three motions: *First*, to strike off a plea filed by James B. Neale as frivolous and immaterial; *second*, for a preliminary injunction to restrain him from collecting or interfering with the dividends declared, or to be declared, upon said stock; *third*, for an order on the bank to pay Mrs. Linton the dividends declared in 1881.

1. The plea alleges that the plaintiff's real surname at the date of the suit was and is Spiller, and not Linton; and that the real name of said Adolphus Frederick Linton, at the time of his marriage to Miss Finlay, was Adolphus Frederick Spiller. The plea is not that the suit is by a fictitious person; nor is any question raised as to the identity of the plaintiffs. Confessedly, they are she who was Miss Finlay, and her husband. Upon the pleadings it is admitted, at least impliedly, that Elwina's husband was married to her under the same name in which he now sues. The suit is in her behalf, and it would

be strange indeed could it be defeated by the suggestion that the surname bestowed upon her in marriage is not her husband's true name. The plea does not deny that Linton was at the time the bill was filed, and is now, the plaintiff's known and recognized surname. If this be so, then it is wholly immaterial that the husband's inherited or original name was Spiller. At the common law a man may lawfully change his name. He is bound by any contract into which he may enter his adopted or reputed name, and by his known and recognized name may sue and be sued. *Doe* v. *Yates*, 5 Barn. & Ald. 544; *The King* v. *Inhabitants of Billingshurst*, 3 M. & S. 250; *Petrie* v. *Woodworth*, 3 Caines, (N. Y.) 219; *In re Snook*, 2 Pittsb. R. 26. The plea, I think, is bad, and must be overruled.

2. Undoubtedly, under the ordinary appointment by the orphans' court, in the exercise of its jurisdiction conferred by the act of March 29, 1832, (Pur. 411, pl. 31,) a guardian is entitled to the custody and care of all the estate, whether lying within the jurisdiction of the court or elsewhere in the commonwealth, to which the ward may then be entitled or may subsequently acquire. The appointment of James B. Neale as guardian of Miss Finlay, however, was not made under that act, but, unmistakably, under the act of April 25, 1850, (Id. pl. 33,) which is as follows:

"The orphans' court of each county in this commonwealth shall have power to appoint guardians of the estates of minors residing out of the commonwealth, in all cases where such minors are possessed of estates lying within the jurisdiction of said court, upon the petition of the minors, or any of their relatives or friends, or any person interested in such estates, without requiring the said minors to appear in court to make choice of such guardians."

Now, it may be that the orphans' court, in a proper case, has authority, under the act of 1850, to appoint a general guardian of the entire estates within the commonwealth of a non-resident minor, including both present and subsequent possessions. But, whether so or not, it is clear to me that the act authorizes a more limited appointment. Be it observed, the appointment may be made upon the petition not only of the minor, or any relative or friend, but of "any person interested in such estates." Thus, the tenant of a particular tract of land belonging to a non-resident minor may petition under this act, but surely the order of appointment would be *quoad hoc*. It would be most unreasonable that upon such petition the court should appoint a general guardian, and it is inconceivable that the legislature intended that all appointments under the act of 1850 should be

unrestricted. True, upon the view now adopted, there might be for the same non-resident minor two or more independent guardians, but each would simply perform the functions of curator of such part of the estate as might be committed to his custody; and herein I perceive nothing incongruous or mischievous. It is not even a novelty, for the same thing occurred anciently in guardianship by socage, where the infant had lands by descent, both *ex parte paterna* and *ex parte materna.* Tyler, Infancy, 237.

It seems to me that upon this construction of the act of 1850 the proceedings in the orphans' court of Armstrong county were conducted throughout. The appointment of a general guardian was neither asked nor decreed. With much precision of language the petition sought the appointment of James B. Neale as guardian of the petitioner's estate, of which she was then possessed in right of her deceased mother and lying within the jurisdiction of the court. Here were two express limitations. The orders of the appointment, if of doubtful construction, should be read with reference to the petition. *Graham* v. *R. Co.* 1 Wall. 704. But, in fact, it is equally definite. It adopted the limitations of the petition. I think it must be held to mean exactly what it says. To extend it by construction would be a dangerous and unwarrantable liberty. It cannot, of course, be maintained that Elwina acquired any interest in this stock or its dividends through her mother. Mrs. Finlay herself had but a life estate, and Elwina takes her grandfather's bounty wholly under the trust deed.

3. While the trust deed provides that Elwina shall not "*sell, dispose of, or charge*" the said "stock, its accretions, and accumulations," without "the consent and concurrence" of such guardian or trustee as the proper court shall appoint for her, it expressly gives her "*the full right to use and enjoy,*" for her "own use" and that of her family, all the said "accretions or accumulations," (*i. e.,* dividends.) Now, although yet in her minority, she has passed her twentieth birthday, and is married. The clear intention apparent upon the face of the trust deed is that she may freely apply the whole income from the stock to the maintenance of herself and the expenses of her household. It is a moderate provision for these purposes, in view of her large estate and station in life. I see, therefore, no good reason why she should not receive these dividends directly from the bank without the intervention of either guardian or trustee. The latter would be a mere conduit. Her right thus to receive the dividends was recognized by all the parties in interest in Mr. Brown's life-time, for by his directions the bank carried the dividends to his granddaugh-

ter's credit, and she checked them out at her own pleasure. It is true, the deed provides that her receipt shall be a discharge of the guardian or trustee, but this does not imply that the dividends shall pass through his hands, but rather the reverse.

The bank has filed an answer expressing its willingness to pay the said dividends to Mrs. Linton if the court shall so direct, and submitting itself to the decrees of the court. The way, therefore, is clear to grant the order asked for, unless it ought to be denied on account of the disclosures which James B. Neale has made to the court. As these disclosures relate largely to matters resting in mere rumor, unsupported by legal evidence, I refrain from the further mention of them in this opinion. I indulge the hope that they have no foundation in truth, and that Mr. Linton may prove to be worthy of his wife's affection and confidence, which it is plain he now possesses. The court is not called upon at this time to deal with the *corpus* of this stock, or make any decree affecting Mrs. Linton's estate generally. These bank dividends should be applied to her comfortable maintenance, in any view of the case. Indeed, if the worst that has been said of her husband be true, this might be but an additional reason why she should have the immediate use and enjoyment of this income which her grandfather's beneficence has provided for her.

The preliminary injunction will be allowed, and it will be ordered that the dividends be paid or transmitted directly to Mrs. Linton. Let orders be drawn in conformity with the views expressed in this opinion.

NOTE. It is not unlawful for persons to be known by any name he or she chooses, or to do business by any name, no fraud being practiced. *Bell* v. *Sun Printing, etc., Co.* 42 N. Y. Supr. Ct. 567; *Clark* v. *Clark,* 19 Kan. 522. See *Cooper* v. *Burr,* 45 Barb. 9; *Eagleston* v. *Son,* 5 Robt. 640; *Williams* v. *Bryant,* 5 Mees. & W. 447.