Graham v. Eiszner.

JULIA GRAHAM

V.

JOHN EISZNER.

*Negotiable Instruments—Notes—Name of Maker—Failure of Considera-
tion—Sales—Express or Implied Warranty—Whisky Barrels—Leakage
— Written Contract—Parol Evidence—Instructions—Pleadings—Variance
—Practice.*

1.  The appellant can not complain of an error committed by the court
in settling the pleadings when no harm has resulted to him therefrom.

2.  A person may adopt any name, style, or signature over which he may
transact business, issue negotiable paper and execute contracts, wholly
different from his own name, and he may sue and be sued by such name,
style, or signature.

3.  Parol contemporaneous understandings can not be allowed to vary an
unambiguous written contract.

4.  Letters written by a party to a suit are inadmissible in his own be-
half, the same being no part of a mutual correspondence.

5.  A former contract in writing is inadmissible in evidence in a suit
between the parties thereto upon one of later date and different tenor.

6.  The law will not hold another liable for the loss of property where
the owner has stood by and seen it go to waste, when by reasonable exertion
and expense he might have saved it.

7.  One can not complain of instructions, which, though open to formal
objections, contain no error of substance.

8.  It is proper to refuse an instruction which has no basis in the
evidence.

9.  Instructions should lay down the law in the fewest and plainest words,
without repetition, and in a consecutive, orderly manner.  This court
strongly condemns the giving of an excessive number of instructions.

10.  In the case presented, while the defendant was not permitted to add
an express warranty to her written contract by parol, she had the full bene-
fit of an implied warranty that the barrels in question were reasonably fit
for the purpose for which she purchased them.

[Opinion filed December 8, 1888.]

APPEAL from Circuit Court of Winnebago County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. N. C. WARNER and J. C. GARVER, for appellant.

Messrs. L. L. MORRISON and A. H. FROST, for appellee.

A person may adopt and use, as indicative of his negotiable and other contracts, a business name or style entirely different from his own proper name, and when he, by himself or a general agent, enters into a negotiable or other contract under such adopted business name, he will be bound by such contract as effectually as though it had been entered into and executed under his own proper name and signature. Vol. 1, Daniel on Negotiable Instruments, 3d edition, Secs. 303, 399 and 399a; Vol. 1, Randolph on Commercial Paper, Sec. 141; Melledge v. The Boston Iron Company, 5 Cush. 158; Medway Cotton Manufactory v. Adams, 10 Mass. 360; Chandler v. Coe, 54 N. II. 561; Devendorf v. The West Va. Oil. and Oil Land Company, 17 W. Va. 172; Bishop on Contracts, Ed. 1887, Sec. 1059.

A parol warranty can not be attached to a written contract, and where a written contract contains no warranty it can not be supplied by parol. 2 Benj. on Sales, p. 821, Sec. 942, and note 13; Frost v. Blanchard, 97 Mass. 155; Wenner v. Whipple, 53 Wis. 298, 304; Memain v. Field, 24 Wis. 640, 642; Shepherd v. Gilroy, 46 Iowa, 193; 1 Parsons on Cont., 589, 590; Ostrand v. Reed, 1 Wend. 424; Reed v. Wood, 9 Vt. 285; Dean v. Mason, 4 Conn. 432; Randall v. Rhodes, 1 Curtis, 90.

C. B. SMITH, J.    This is an action in assumpsit to recover the amount of twelve promissory notes.    Appellee was a cooper in Chicago, and appellant was a distiller in Rockford, Illinois. Appellee had been furnishing whisky barrels, suitable to hold sour mash whisky, to appellant for the years 1883 and 1884, which had proven satisfactory.    The barrels furnished for

these two years were furnished, it is claimed by appellant, under a written contract containing an express warranty. Appellant desired more barrels to hold the same kind of whisky for 1885–6. The distillery was known in a general way as "Graham's Distillery" and was owned and operated by Julia Graham, the wife of Freeman Graham, under the name and style of "Freeman Graham, Agent," and the distillery was managed and run by Byron Graham, son of Julia and Freeman Graham. The reason assigned for adopting the peculiar name under which the business was carried on was out of respect for Freeman Graham, who was then quite an old and feeble man, and who had formerly carried on the business in his own name as the agent of his wife, Julia.

On the 24th day of October, 1885, Byron Graham went to Chicago and called on appellee at his place of business for the purpose of buying barrels for the ensuing fall and winter. After the matter had been talked over, appellee wrote out a proposition, stating the terms and times and manner of payment upon which he would furnish the barrels, and handed it to Byron Graham. The proposition submitted was as follows:

"CHICAGO, Oct. 24, 1885.

"We this day agree to make Graham's Distillery at Rockford, Illinois, all the barrels, half barrels and kegs they may use this season, (and they expect to use about as many as last year,) prices to be for the barrels $2.65 each, half barrels $1.90 each, and 10 gal. kegs at $1.15 each. All delivered on board cars in Chicago. Terms to be notes for equal amounts on each invoice, at 6 mo., 9 mo. and 12 mo., each at 7 per annum.

"JOHN EISZNER."

"The above proposition accepted by us this day, Oct. 24, 1885.

"GRAHAM DISTILLERY,
"Per Byron Graham."

After examining it, Byron Graham wrote on it the following acceptance: "The above proposition accepted this 24th day of October, 1885.

"GRAHAM'S DISTILLERY,
"Per Byron Graham."

The barrels, half barrels and kegs were furnished under this proposition and delivered to the distillery, and received and used for the purpose for which they were made.    The barrels were all delivered between the date of the contract and the first of April following, and in such numbers as appellant desired.    The notes were executed at the time of their date and signed, "Freeman Graham, Agent," and delivered to appellee.    The notes were not paid, and on suit being brought the defendant set up several defenses; at least we are so informed by the argument of appellant's counsel; but none of the pleadings being copied into the abstract we are unable to determine what the issues were, except as we are advised by the argument.    We learn, however, from this source, that the execution of the notes was denied under oath, and that numerous pleas purporting to be pleas of failure of consideration were interposed.    A trial was had resulting in a verdict for plaintiff for $1,604.23, and a motion for new trial overruled and judgment on the verdict; and now appellant brings the case here for review.    Appellant assigns a great number of errors committed against her.    From the imperfect condition of the abstract in this case, we might be well justified in affirming this judgment for want of any way of discovering whether any errors were committed or not, except to go back to the original transcript and there read 651 pages of the original record, which we can not undertake to do.    Counsel for appellant makes long and bitter complaint of error committed by the court in settling the pleadings in the case, and insist that the mystification which gathered around court and counsel was denser than the famous "London fogs," and that the confusion of declarations and amended declarations and pleas and amended pleas and demurrers to them all was so great, that no intelligent issue was or could be formed, and that no rational or fair trial was possible in this luckless bedlem and jargon of special pleading.    And yet counsel have not seen fit to copy a single count of the declaration or a single one of her many good or bad pleas, into the abstract, so that we might see, if it were possible through this alleged fog and confusion, whether any error had been committed against appellant in that respect.

We have looked in vain in this abstract for a copy of any of the notes or the contract of October 24, 1885, or any one of the letters written by appellant (with one exception), which he insists should have been admitted in evidence.

But notwithstanding this condition of the abstract, we have given the case a careful and patient hearing upon its merits. It sufficiently appears from the record that the plaintiff finally met the views of the court with a good declaration, and that the defendant at last got the general issue to stick, and then proceeded to the trial.   The court permitted everything to go to the jury on the trial, under the general issue, which could possibly have been offered under any proper special plea, and it was a matter of no importance to the defendant what became of her special pleas, so long as she was able to put her entire defense in under the general issue.   So that, even if the court committed any error in the pleadings, she has suffered no harm from it, and can not be heard to complain.

Appellant complains that the court erred in admitting the notes signed, " Freeman Graham, Agent," against Julia Graham, the party named in the declaration, and insists that there was a variance.   The declaration alleged that Julia Graham executed the notes under the name and style of " Freeman Graham, Agent."   The proof is uncontradicted, and is made by Byron Freeman himself, that Julia Graham did carry on the business under the name of "Freeman Graham, Agent," and that he, acting as her agent and manager, so signed the notes in controversy and delivered them to plaintiff.   There was no error in admitting the notes under the averment in the declaration.   It is well settled that any person may adopt any name, style or signature over which he   may transact business and issue negotiable paper and execute contracts, wholly different from his own name, and may sue and be sued by such name, style or signature.   Hynes v. Griffin, 89 Ill. 134; Vol. 1, Daniel's Neg. Inst., 3d Ed., 303, 399 ; Melledge v. Boston Iron Co., 5 Cush. 158; Medway Cotton Factory v. Adams, 10 Mass. 360 ; Chandler v. Coe, 54 N. H. 561.   The notes were properly admitted.

The real defense interposed and urged was one of failure

of consideration. The appellant insists that she had a right to prove by parol an express warranty of the cooperage, and that the court erred in refusing her the right to do so. Appellant offered to prove by Byron Graham what was said between him and appellee at the time of making the contract in writing, October 24, 1885. It was proposed to prove by Graham that an express warranty of the barrels and kegs was then made that they would not leak, and that such warranty was not put in the written proposition and acceptance then entered into by the parties, and under which the barrels were made and delivered. In order to justify this position counsel for appellant claim that the proposition and acceptance was a mere memoranda and not a perfect and complete contract in itself, and that evidence *dehors* may be resorted to for the purpose of adding to it an express warranty. We can not concur in this view. There is nothing incomplete or ambiguous in the proposition made. There was nothing about it that needed any explanation to make its terms intelligible. It had all the elements of a contract except the signature of appellant. When she accepted its terms it then became binding on both parties. There is no rule of law better settled than that which prevents contracts resting partly in parol and partly in writing. Parol contemporaneous understandings which are not included in the writing can not afterward be proven and attached to the writing. This rule is so elementary that it needs only to be stated. Smith v. Price, 39 Ill. 28; Purington v. Northern Ill. R. R. Co., 46 Ill. 297.

Nor can a warranty be attached to a written contract by parol. 2 Benjamin on Sales, p. 821, Sec. 942, and note B; Frost v. Blanchard, 97 Mass. 155; Wenner v. Whipple, 53 Wis. 298, 304; Shepard v. Gilroy, 46 Iowa, 193.

Counsel for appellant insist that the case of Ruff v. Jarrett, 94 Ill. 475, supports them. We do not think so. The writing in that case claimed to be a contract was clearly no contract, and so the Supreme Court expressly hold. It was a very brief and imperfect memorandum relating to the sale of ice. It did not state the amount sold nor the price, nor to whom sold. It would be utterly idle to contend that such a paper had any

Graham v. Eiszner.

of the elements of a contract, and that it could be enforced upon its own terms against any one, or for any sum, or for any purpose. It was utterly without any meaning on its face, and so the court held. Nor are the cases referred to by the court in that case analogous to this. Promissory notes do not stand on the same footing with reference to the point here involved, as other contracts in writing, at least so far as the consideration expressed in the note is concerned, and also as relating to the matter of usury. It has always been held that you may show a failure of consideration to a note, or that usury is embodied in it. Simple promissory notes never contain the terms and conditions of contracts out of which they grow. They are but the end and fruit of the contract, and have no reference to anything except the amount and time of payment, and hence where there is no other writing concerning the contract, its terms may be shown by parol. We think no error was committed by this refusal to admit the conversation had at the time of executing the contract.

During the progress of the controversy about the barrels, appellant, by her agent, Byron Graham, wrote certain letters to appellee about the barrels and their condition, and the terms of the contract, and upon the trial of the case offered these letters in evidence on her own behalf, to which objection was made by plaintiff and sustained by the court. The letters were no part of a mutual correspondence by the parties, when the letters on both sides were offered. We are not aware of any rule of evidence under which these letters could be admitted. A party can no more make evidence for himself by writing letters than he can by making oral declarations.

Objection is also made that the court erred in refusing to admit a former written contract for a previous year containing different terms including a warranty between the same parties. We think there was nothing in this objection. While appellant was not permitted to add an express warranty to the written contract by parol, she had the full benefit of an implied warranty. Whether the cooperage was as good as the implied warranty was the real question in the case. The implied warranty required the barrels to be reasonably

fit and proper to hold sour mash whisky. On the trial appellant introduced a large number of witnesses who testified that the barrels, half barrels and kegs all leaked when the warm weather of the summer of 1886 came, and that in consequence of such leakage appellant lost nearly one thousand gallons of whisky, worth from two to three dollars per gallon. This leaking was charged to imperfect workmanship and to unseasoned material in the barrels by witnesses for appellant.

On the part of the defendant a large number of witnesses testified that the barrels were well made and that the material out of which they were made was well seasoned, and had been in store long enough to make it perfectly seasoned, and that there was no defect in the construction of the barrels, or want of dryness in the material entering into the construction. It was also in proof by many witnesses on both sides that no whisky barrel could be made so tight that it would not leak, and that such leakage must be prevented by driving the hoops as the leaks appeared.

It appears also in the evidence from the report of the government gaugers of this whisky, that what is known as "wantage" accounted for fully one half, if not more, of the loss claimed by appellant. "Wantage" covers what is lost by evaporation in the storage of whisky and what soaks into the barrels. This "wantage" increases with the length of time whisky remains in store, and it amounts to so much that the government allows the manufacturer a rebate in his taxes on that account, according to a regular scale of loss according to the time the whisky is stored.

The question as to the condition of the barrels when made, and from the time they were received by appellant until they were used, and during the subsequent summer, and the amount of leakage and "wantage," and the reasons for the same, were all fully and fairly submitted to the jury and considered by them. So far as we are able to see from this record the defendant was permitted to go fully into her defense and to submit every fact to the jury which she was entitled to do under the law, or which she could have given under any special plea

which could have been properly pleaded. Instead of her not having had a fair trial, we think, on the contrary, the fullest indulgence was given by the court to her to make her defense and have it fairly and fully considered by the jury. We can not say that the verdict was not supported by the evidence.

It is next objected that the court erred in giving and refusing instructions prejudicial to appellant. We find the court gave eighteen instructions for the plaintiff and seventeen for the defendant, and refused two for defendant. We shall not stop to discuss this vast mass of instructions in detail. We have examined them and find no substantial error in those given for the plaintiff. Some of them may be open to formal objections, but we find no error of substance.

The first refused instruction for defendant told the jury that if they found the defendant had suffered loss by leakage from these barrels, that he was entitled to have it allowed in this case against the plaintiff. This instruction would have made the plaintiff a guarantor against any and all loss without reference to his implied warranty under his contract. There was no evidence to support the instruction, and it was properly refused. The second refused instruction told the jury that if the barrels were leaking, and that defendant could not have taken the whisky out of the leaky barrels and placed it in other vessels without considerable loss to herself, then she was not bound to do so, but might still recover for such leakage from the plaintiff. We do not think this instruction contained a correct proposition of law. The law will not permit any person to stand by and see his property destroyed or go to waste when, by reasonable exertion and expense, he might save it.

We desire to express our disapprobation of the reckless and utterly useless number of instructions presented to the court in this case by both parties to be passed upon. Such a mass of instructions does not enlighten or instruct a jury, but on the contrary, confuses them and renders the purpose of instructions from the court upon the law of the case utterly null and void. To the jury unaccustomed to legal formula, it must be and can be nothing more than a farce and jangle of jarring

words, rung upon many changes and repetitions until to them it becomes "confusion worse confounded," and if finally their good sense and practical judgment enables them to decide the case correctly it is not because of an unintelligible mass of instructions, but in spite of them. Instructions ought to lay down the law in the fewest and plainest words, without repetition, and in a consecutive, orderly manner. Courts ought not to allow themselves to be used for the purpose of making elaborate arguments to the jury through instructions. The writer of this opinion speaking for himself only, believes it to be the duty of the judges to prepare their own instructions to the jury in the nature of an orderly, direct and simple charge, and with as much brevity as consistent with a correct statement of the law, reserving the right to counsel to submit propositions as they may desire, and have them embodied in the general charge prepared and written by the court, if found correct.

Finding no substantial error in this record the judgment is affirmed.

*Judgment affirmed.*