[L. A. No. 2089. Department Two.—July 29, 1908.]

MADELINE L. EMERY, Respondent, v. SYLVESTER KIPP, Appellant.

PUBLICATION OF SUMMONS—AFFIDAVIT.—The ruling and determination in *Rue v. Quinn,* 137 Cal. 651, as to the sufficiency of an affidavit for the publication of summons, followed and approved.

VOID JUDGMENT—COLLATERAL ATTACK.—A judgment must be void on its face in order to be the subject of a collateral attack.

ID.—JUDGMENT AGAINST MARRIED WOMAN SUED BY MAIDEN NAME— QUIETING TITLE—NONJOINDER OF HUSBAND—PUBLICATION OF SUMMONS.—A judgment quieting title to land, rendered against a married woman in an action brought against her alone, in which she was sued by the maiden name under which she acquired the interest claimed by her in the property, is not void, either because of the nonjoinder of her husband as a party defendant, or because she was not sued by her then married name. And it makes no difference, in such a case, whether the judgment was rendered by default, upon a substituted service of summons by publication, or upon a personal service.

ID.—LAND ACQUIRED IN OTHER THAN REAL NAME OF OWNER.—If a person chooses to take the title to real estate in a name other than his true name, so far as that property is concerned, he has assumed the name in which he takes title as his true name, and in suits affecting the property he may be sued by such designation.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

Stearns & Sweet, for Appellant.

L. L. Boone, for Respondent.

HENSHAW, J.—Plaintiff commenced this action to quiet title to lands situate in the county of San Diego. She obtained judgment, and from that judgment and from the order of the court denying defendant's motion for a new trial he appeals.

Upon the trial the following facts were established without conflict: The maiden name of plaintiff, who is an English-

woman by birth, is Madeline Louisa Munro. In England she was usually called Louisa. After coming to California she was usually called Madeline by her friends and family, although she was sometimes addressed and spoken of as Louisa. In 1888 one Phipson, the then owner of the land in controversy, executed a deed thereof to this plaintiff, naming her therein as Louisa Munro. In December, 1894, under the name of Madeline L. Munro, she married Alfred A. Emery, and continued to be his wife until the time of his death in 1903. In the marriage license she was named and designated Madeline L. Munro, and in the certificate of the minister who performed the marriage ceremony her name was written Madeline L. Munro. She had never executed any conveyance of the property, and, so far as her title is concerned, since the date of her deed, it has always stood on the records of the recorder's office in San Diego County in the name of Louisa Munro, and not in the name of Madeline Louisa Munro or Madeline L. Munro.

Defendant's title comes by mesne conveyance from a judgment obtained in an action to quiet title to the land in controversy prosecuted by Nellie Rue against Louisa Munro. Proof of plaintiff's title having been made as above outlined, defendant to establish his interest in the land offered the judgment-roll in the action of Nellie Rue *v.* Louisa Munro, and upon objection of plaintiff, the judgment-roll was refused admission in evidence. The soundness of the court's ruling upon this proffer embodies the questions presented for consideration upon this appeal. Respondent's objections to the admission of the judgment-roll, while couched in different forms, resolve themselves into two: 1. That the judgment is void because of the insufficiency of the facts set forth in the affidavit for publication of summons; and 2. That the court acquired no jurisdiction of this plaintiff by the substituted process and constructive service, she being a married woman and her husband not having been joined with her (Code Civ. Proc., sec. 370) ; and she not having been sued in her true name, which at the time of the commencement of the action of Rue *v.* Munro was Madeline L. Emery and not Louisa Munro.

The first objection thus advanced needs little consideration. This plaintiff connected herself with the action of *Rue* v. *Quinn* by making a motion therein, after judgment by default

had been entered against her, to set the judgment aside upon the ground that it had been entered without any jurisdiction having been obtained over her person. The ground there urged was the same as that here presented, that the facts set forth in the affidavit for the publication of summons were entirely insufficient. The trial court granted her motion, but upon appeal to this court, its order was reversed, it being here held that the affidavit was sufficient (*Rue* v. *Quinn*, 137 Cal. 651, [66 Pac. 216, 70 Pac. 732]). The ruling and determination in *Rue* v. *Quinn* have subsequently been approved in numerous cases. (*Weis* v. *Cain*, (Cal.) 73 Pac. 980; *People* v. *Wrin*, 143 Cal. 13, [76 Pac. 646]; *People* v. *Norris*, 144 Cal. 424, [77 Pac. 998]; *Cargile* v. *Silsbee*, 148 Cal. 260, [82 Pac. 1044]; *Shepard* v. *Mace*, 148 Cal. 272, [82 Pac. 1046].)

The questions presented under the second objection are both more interesting and more important. Preliminarily, it is to be borne in mind that the attack here made upon the judgment in Rue v. Emery is collateral, and to be successful, it must be established that the judgment is void on its face. (*Hahn* v. *Kelly*, 34 Cal. 391, [94 Am. Dec. 742]; *Sharp* v. *Daugney*, 33 Cal. 505; *Galvin* v. *Palmer*, 134 Cal. 426, [66 Pac. 572]; Van Fleet on ·Collateral Attack, secs. 3, 614, 616.) That the judgment was not void for nonjoinder of the husband as party defendant is established by the case of *Bogart* v. *Woodruff*, 96 Cal. 609, [31 Pac. 618]. The facts in that case were that a married woman, while a *feme sole*, had executed a promissory note. Suit was brought upon this promissory note against the maker. She was sued in her maiden name and her husband was not joined. Personal service upon her was had, and judgment went for plaintiff upon her default. The original plaintiff then commenced another action to enforce the judgment against the wife sued under her married name, her husband being joined as defendant. There, as here, a collateral attack was made upon this judgment, it being contended that it was void, 1. Because of the misnomer of the married woman defendant; and, 2. Because, being a married woman, her husband was a necessary party, without whom the court could not obtain jurisdiction of the person of the wife. The trial court took this view, but upon appeal the judgment was reversed by this court holding that when the wife suffered such a judgment to be given against her, either after

trial on the merits or by default, the objection of the non-joinder of the husband was waived, and holding further that the judgment was not void because of misnomer in describing her by her maiden name, the name under which she executed the contract, she being sufficiently identified by the name under which she was sued. The only distinction between the Bogart case and the case at bar is that in the former personal service on the defendant was had, while in the latter substituted service by publication of summons was the mode adopted for acquiring jurisdiction. Whether or not any different conclusion is necessitated by reason of this fact is a matter for later consideration.

The rule laid down in the Bogart case,—namely, that a judgment is valid when obtained against a married woman sued as a *feme sole* and in her maiden name, particularly upon any contract which she has executed in such name, is a rule of general acceptance. (1 Freeman on Judgments, sec 150; Van Fleet on Collateral Attack, secs. 603, 616; *Hartman* v. *Ogborn*, 54 Pa. St. 120, [93 Am. Dec. 679]; *Winchester* v. *Everett*, 80 Me. 535, [6 Am. St. Rep. 228, 15 Atl. 596]; *McCaffrey* v. *Carrigan*, 49 Ind. 175.) This is in consonance with the principle of common law that a man may change his name at will and sue or be sued in any name in which he is known and recognized. (*Linton* v. *First Nat. Bank*, 10 Fed. 894.) So a person may adopt any name in which to prosecute business, and may sue or be sued in such a name. (*Graham* v. *Eiszner*, 28 Ill. App. 269.) This principle has been applied in this state, where it is held that if the owner of property convey by any name, the conveyance as between himself and his grantee is valid and will transfer title. (*Fallon* v. *Kehoe*, 38 Cal. 44, [99 Am. Dec. 347]; *Wilson* v. *White*, 84 Cal. 239, [24 Pac. 114].)

So, when it comes to examining the authorities dealing with actions affecting real estate, this same principle, it will be found, is universally applied. If a man chooses to take the title to real estate in a name other than his true name, so far as that property is concerned, he has assumed the name in which he takes title as his true name, and in suits affecting the property he may be sued by such designation. A leading and well-considered case upon this subject is that of *Blinn* v. *Chessman*, decided by the supreme court of Minnesota (49

Minn. 140, [32 Am. St. Rep. 536, 51 N. W. 666]). In that case the purchaser was George Chessman. He accepted a deed executed to him in the name of George Cheeseman, and the deed was so recorded. Thereafter an action was brought by one Leonard against George Cheeseman to determine adverse claims to the property. Summons was served by publication and judgment by default was rendered in favor of Leonard that he was the owner of the property. In time plaintiff Blinn succeeded to Leonard's title and brought suit against George Chessman, and the court stated, the question presented in that case "was whether a judgment against Cheeseman was of effect as to this defendant Chessman as respects his title to the land." The reasoning of the court is full and convincing. It declares the presumption to be that a grantee who personally accepts, retains, and records a deed of conveyance, does so with knowledge of its contents. It affirmed the trial court in holding that the Leonard judgment against Cheeseman was binding upon Chessman, who had taken title to the property in the name of Cheeseman, saying: "This conclusion is not based upon the ground of the likeness of the two names, either in spelling or in sound; but upon the ground —upon which also the decision of the court below was placed— that the defendant is to be deemed to have adopted the name of Cheeseman for the purpose of acquiring and holding the title to this land, and he can have no reason to complain that he is so designated in legal proceedings calling in question the validity of the title so acquired and held. From the fact that this was not his true name it does not follow that the court did not acquire jurisdiction. If he had assumed this name, or any other, generally, and for all purposes, and especially if he had come to be known by the name assumed, there would be no doubt that legal proceedings against him in such name would, in general, be sustained. The name is not the person, but only a means of designating the person intended; and where one assumes and comes to be known by another name than that which he properly bears, that name may be effectually employed for the purpose of designating him. . . . In this case it is probably true that the defendant did not intend to change his name, nor to adopt for general purposes the name of Cheeseman, but he did—if he knew the misnomer, as we must assume he did—most effectually assume that name for the

purpose of taking and holding the title to this land. He not only accepted the conveyance made to himself by that name, but he placed it on record, for the purpose, and with the effect, presumably, of giving notice to the world that the title had been so conveyed and was so held. . . . In proceedings concerning this land it would be at least quite as likely that the name disclosed by the record as the grantee would be used in a summons or notice intended to be addressed to such grantee as that the record should be disregarded, and the true name of the defendant used. Hence there was as much reason why his attention should be arrested by the name of George Cheeseman in a published summons or notice as there would be if his true name were used. He had placed himself under the necessity of having regard to the former as well as the latter. He cannot well complain that the name in which he took the title, and which he put forth to the world by the records, as the name of the grantee, should be employed in proceedings instituted for an adjudication concerning that title."

The same principle is enunciated by the supreme court of Missouri in *Elting* v. *Gould,* 96 Mo. 535, [9 S. W. 922]. The court was passing upon a judgment obtained in a suit brought against R. O. Elting to enforce a lien for taxes upon his property. Judgment had been given against R. O. Elting and the land was sold and conveyed by sheriff's deed. Upon the records of the county the land stood in the name of R. O. Elting, but Elting's name was Richard O. Elting, and he contended that a judgment rendered against him in the name of R. O. Elting was void. The service as here was by publication. The court upheld the judgment, saying that the patent to the land which was recorded and which was the only conveyance of title on record showed that R. O. Elting owned the land, "It is by this name and description that he is known in his title papers. We think it is sufficient."

Applying the principle of these cases to the facts in the case at bar, it appears that this plaintiff took title to the land in the name of Louisa Munro; that in her recorded certificate of marriage her name was given as Madeline L. Munro; that there was nothing of record to disclose that Louisa Munro was the same person designated as Madeline L. Munro, consequently there was nothing of record to disclose that Louisa

Munro had ever changed her name. So far as the real estate was concerned she held title to it only as Louisa Munro. No steps, which a reasonable or prudent person might take, would under our existing laws serve to give a party desirous of commencing an action any knowledge or information that Louisa Munro had married or had in any other way changed her name. The law does provide that any person in whom the title of real estate is vested who shall from any cause have his or her name changed shall upon any conveyance of real estate set forth the name in which he or she derived title to such real estate. (Stats. 1874, p. 45; Civ. Code, sec. 1096.) The law, too, might well have provided that when a woman in whose maiden name title to real property stands shall marry, she shall cause recordation of the fact to be made in such manner as to give notice thereof to the world, but the law not having done this, it may not be said that a plaintiff is in fault who, after exhausting the means of information open to him, commences an action against a person holding such title by the same name in which the title is held. The inconvenience and, indeed, the grave consequences resulting from a different view would render actions to quiet title by substituted process of little or no benefit. In nearly every state there are statutes authorizing the change of a man's name. A non-resident owner of land in California may legally cause his name to be changed in another state and an adverse claimant in this state, after satisfying the court that after due diligence the non-resident owner cannot be found within the state, may commence an action against the party under the name in which his record title stands. If a judgment so obtained can be collaterally attacked by a showing that the non-resident claimant had legally changed his name, and that, therefore, jurisdiction was not acquired, which is the contention here made, the value of such an action is at an end.

But does the fact that in this case jurisdiction of the defendant was secured by published summons, in any respect, change the rule? We think not. In every case where service by publication is authorized, if the statutory requirements have been complied with, it is as effective for all purposes as personal service. The only distinction in this state is found in the privilege accorded by section 473 of the Code of Civil Procedure which allows a defendant not personally served, on

such terms as may be just, to appear within a year after the rendition of a judgment by default against him and answer to the merits of the original action. We have here a case where the claimant to the real estate is served by published summons under the name by which she took and recorded her tit| ᵻ to the land. In *Blinn* v. *Chessman,* the service was by public| ᐧ tion, and addressing itself to this question, the court the| ᵻ said: "If such a name is employed in legal process or notic| ᵻ, whether served personally or by publication—where su| h service is authorized—the notice is effectual; the person wᵤₒ has assumed the name is presumed to understand that the process or notice addressed in that name is addressed to him." In *Mosely* v. *Reily,* 126 Mo. 124, [28 S. W. 895], the same subject is considered, the court saying: "As has been said, the object of the publication is to give notice of the proceeding to the real person who is interested. The name is only used to identify such person, and may be the only means of identification. But, if the name as used is the same as the party himself uses and under which he is known, and the facts recited in the notice sufficiently identify the person intended, and advise him that his property is brought before the courts, we think that would be sufficient to give the court jurisdiction to render the judgment. . . . Notice by publication, though only allowable from necessity, is, when authorized, as effective as personal service. Every one is presumed to have had opportunity to read these publications and to learn from them the nature and objects of the proceedings of which they give notice." In *Lane* v. *Innes,* 43 Minn. 137, [45 N. W. 4], the supreme court of Minnesota declared that "any notice which would give jurisdiction if personally served upon the party is good when served by publication if that publicity of the pendency of the action which the law intends is thereby given." (See, also, Van Fleet on Collateral Attack, secs. 361, 367.)

As against this reasoning and authority our attention is called to but one conflicting case, that of *Freeman* v. *Hawkins,* 77 Tex. 498, [19 Am. St. Rep. 769, 14 S. W. 364]. In that case land was conveyed to Mary E. Robison. She subsequently married a man by the name of Freeman. Thereafter suit was brought against her in the name of Mary E. Robison to quiet. title. The court declared that Mary E. Robison upon mar-

riage took the surname of her husband, saying: "A citation, whether to be served personally or by publication, must contain the names of the parties to the action. We are of the opinion that a citation by publication requiring 'Mary E. Robison' to be cited and to appear, was not sufficient to give the court jurisdiction to render a judgment that would bind 'Mary E. Freeman.'" In this brief statement there is no consideration paid to the general rules which we have discussed, nor to the authorities which support them, and we think the conclusion reached by the Texas court is at variance with the otherwise universally accepted doctrine.

For the foregoing reasons the judgment is reversed, with directions to the trial court upon a new trial to admit in evidence the proffered judgment-roll.

Lorigan, J., and Shaw, J., concurred.