[No. 4009.]

## WHITE V. HARTMAN, ADMINISTRATRIX.

1. CONVEYANCES—*Construed.* A conveyance expressly reserved an equitable lien, called, indeed, a vendor's lien, until all the purchase money should be fully paid, "when this deed shall become absolute." *Held,* the manifest intention that the deed should not become absolute until full payment of the purchase money. "Grantee" construed to mean "grantor," where this was the manifest intention. (476-478)

2. SEAL—*Voluntary Association,* is not required to have a seal. (480)

3. NAMES—*One May Assume Any Name,* at his pleasure, and may transact business therewith. 'He will be responsible under such assumed name. (482)

4. HOMESTEAD—*Claim Of—Effect.* A claim of specified premises, by qualified person, filed in the recorder's office, takes precedence of a general lien, e. g., the lien of a judgment under which no levy has been made. (482)

5. —— *Subordinate to an Equitable Lien,* for the purchase money of the premises, evidenced by reservation contained in the deed by which they are conveyed, and by the covenant of the grantee in such conveyance. (482, 483)

6. CONTRACTS—*Construed.* Certain promissory notes held to be the notes of a corporation named, and not the individual notes of the principal officer thereof. (476-482)

*Error to Denver District Court.* HON. GREELEY W. WHITFORD, Judge.

MR. JOHN P. BROCKWAY for plaintiff in error.

MR. WM. B. TEBBETTS and MR. HERBERT M. MUNROE for defendant in error.

BELL, J.

On the 1st day of October, 1902, The Ancient Order of Emethachavah, a communistic corporation, through Franklin P. White, 'C'Chief and its sole trustee, purchased from James W. Weir of Denver, Colorado, lots 16 and 17 in block 2 in Weir Addition, State of Colorado, for $1,200 and gave 70 serial notes in payment therefor. The said Weir executed and delivered a warranty deed conveying said lots to Franklin P. White as sole trustee and C'Chief of The Ancient Order of Emethachavah. The deed contained the following notice

of intention to hold a lien on the property for the purchase money:

"A vendor's lien, however, is hereby expressly retained by said first party on the above described property, until all of said notes, aggregating twelve hundred dollars, are fully paid, when this deed shall become absolute."

Three hundred and sixty dollars of the purchase price was afterward paid to Weir, leaving some $840 evidenced by that series of said notes from 27 to 70, both inclusive, unpaid, with interest thereon. On the 10th day of January, 1908, said White as sole trustee of The Ancient Order of Emethachavah, by quit claim deed, for $1.00 and other consideration, conveyed said lots to his principal, The Ancient Order of Emethachavah. On the 31st day of January, 1910, the said Franklin P. White, sole trustee and C'Chief of The Ancient Order of Emethachavah conveyed said lots from himself, as trustee, to himself, as an individual, for the consideration of $1.00 and other valuable considerations. Said Franklin P. White as an individual did on the 9th day of February, 1912, long after the commencement of this suit, enter on the margin of the record of his said quit-claim deed, in the recorder's office, a claim of homestead, and avers, first: That the promissory notes given for the purchase money of said lots were the personal notes of said White, and denies that The Ancient Order of Emethachavah ever assumed to pay or become responsible for the payment thereof; second, that he holds a homestead on said premises, which is superior in right to the claim of the defendant in error; third, that on the 25th day of November, 1907, he was, by a U. S. bankruptcy court, in Denver, Colorado, discharged and released from all of his debts, and asks that the defendant in error be restrained and enjoined from selling said lots for the payment of the purchase money, for the reasons aforesaid. A reply denied the allegations in the answer of plaintiff in error, and set up much new matter. Judge Whitford of the Denver District Court took the evidence and, upon the final hearing, denied the relief

prayed for by the plaintiff in error, and entered judgment for the defendant in error, and a decree ordering said lots sold for the purchase money, interest and cost of suit to be paid therefrom, etc. During the distincter days of this ancient order these notes were treated and intended to be the notes of the Ancient Order of Emethachavah. It was the Ancient Order that purchased the lots. It was its sole trustee, manager and C'Chief that made the purchase and executed and delivered the notes. The deed which the C'Chief accepted and under which the Ancient Order claims title states on its face that the purchase money was not paid, and the grantor expressly retained a "vendor's lien" on said property until all of the said notes were paid, "when this deed shall become absolute." It is manifest from the deed given and accepted that it was the intention of the grantor and the grantee that the deed should not become, ever absolute, until all of these notes were paid. On the 16th day of October, 1902, the grantor and grantee, under the title of Franklin P. White, trustee, gave notice and made ample covenants in writing, which were duly executed, acknowledged, delivered and recorded in said recorder's office, wherein said conveyance is alleged to have been made without the payment of the purchase money. The said agreement states that the grantee, The Ancient Order of Emethachavah, by its trustee, gave its promissory notes therefor and describes these notes and states in writing that a vendor's lien was reserved and retained by the grantor until said notes and each of them, together with the interest thereon, is fully paid, and further states that, in case the same or any part thereof shall not be paid within thirty days of the time that they may become due, the grantor reserves the right and privilege of foreclosing such lien by an appropriate suit in court, "and on behalf of the grantee in said deed, it is hereby agreed, that all the reservations, rights and privileges aforesaid mentioned or claimed by said grantee (evidently meaning grantor), including the said vendor's lien and the right to foreclose the same are hereby granted and

conceded to him pursuant to justice and equity and the law in such cases provided." This instrument was signed by James W. Wier, grantor, and by Franklin P. White, trustee.

Taking the original deed of these lots with the above instrument, and the purpose seems self-evident to create an equitable lien for the purchase money for these lots. All of the defenses to the enforcement of this equitable mortgage or lien are purely technical, contrary to equity and fair dealing, and untenable in a court of equity.

The evidence discloses that the Denver Fraternity of Emethachavah, a voluntary association, was organized in 1898, and the same was incorporated on the 18th day of March, 1901, under the name of The Ancient Order of Emethachavah. The articles of incorporation provide that The Ancient Order of Emethachavah shall be the chief organization, and all other organizations shall be subordinate to it and shall be under its jurisdiction and control. The articles provide for a C'Chief, who shall hold his office during his natural life, or until his successor is appointed and qualified, and shall be manager of the corporation, and all the title to the property of the corporation shall be vested in him as sole trustee. He is given power to appoint his own successor and advisory director, and is the sole trustee of the organization. The only other officer provided for by the articles of incorporation is an advisory director, without power other than as advisory. The articles further provide that all members of the corporation taking the holy covenant degree of the order shall, upon taking such degree, yield up, grant, convey, remise, release, quit-claim, assign and transfer to the C'Chief all of the property of such member so taking such degree, of every name or nature, real, personal and mixed, which said property shall thereupon become the property of the C'Chief to be held by him in trust for this corporation as aforesaid. The C'Chief is given sole power to provide by-laws for the corporation. The articles also provide that no organization bearing the name of Emethachavah or words

equivalent to it shall be organized or founded except upon the approval and under the direction of the C'Chief of this corporation, and shall be under the jurisdiction and control of such C'Chief. He has sole power to convey its property, etc. After the incorporation of the order, there seems to be no evidence showing an organization of a fraternity as provided for in the articles of incorporation. However, it seems that the C'Chief continued to use the name of the Denver Fraternity of Emethachavah until the latter part of 1904, when the corporation ceased active operations. The bank account of the corporation was kept in the name of the Fraternity, its bills were paid by checks issued in the name of the Fraternity, and it did its general business in the name of the Fraternity. It would seem that, by virtue of the incorporation, the preliminary organization would be merged in the corporation, and that, under the articles, any subordinate organization existing after the filing of the articles of incorporation had to be organized under the jurisdiction of the corporation and under its directions with the approval of the C'Chief. However, the C'Chief seemed to be given absolute power, by the articles of incorporation, as trustee, and he assumed absolute power, it would seem, in the Fraternity, and always signed his name as sole trustee of the Denver Fraternity of Emethachavah. He seems to have used the names of the Ancient Order of Emethachavah and the Denver Fraternity of Emethachavah, after the filing of the articles of incorporation, as interchangeable, and as meaning one and the same thing. The C'Chief took the deed to the lots in controversy in the name of The Ancient Order of Emethachavah, and gave notes for the payment of the purchase money in the name of the "Denver Fraternity of Emethachavah, by Franklin P. White, sole trustee." A few days later, he joined the grantor in the execution of an agreement giving the grantor, James W. Wier, an equitable mortgage, in which agreement it is stated that the grantee in the deed gave his promissory notes referring to himself as the trustee of The

Ancient Order of Emethachavah; then he specifically grants, in behalf of the grantee named in the deed, a lien for the payment of these promissory notes. When he executed the notes, he impressed a metallic seal thereon with the lettering "Emethachavah, Founded Cosmon 50, Official Seal." He afterward attempted to transfer from himself as trustee of The Ancient Order of Emethachavah said lots, by warranty deed, to himself as an individual, and placed the same seal on the deed as the seal of The Ancient Order of Emethachavah. He testified, when this case was being tried in the County Court of Denver County, that the seal above described was the only one owned by The Ancient Order of Emethachavah or by the Denver Fraternity of Emethachavah. In the trial of the same case later in the District Court, he testified that they had two seals at one time, but that the corporation seal was made over into a notary seal. It is quite unusual, and is not required by law, that a voluntary association shall possess a seal. On the other hand, the statutes recognize a seal for an incorporated company. If, by mistake or lack of information, these organizations provided two seals when but one is usual, it is difficult to see why the C'Chief should have mutilated the one generally used, and have preserved the useless one, and have used the same as the corporate seal. The attending circumstances strongly indicate that the C'Chief stated the actual condition when he testified that the seal placed on the notes and deed was the only seal owned by either association until after this suit was commenced. However, when the identity of this seal became an important question in this case, the C'Chief had a second seal manufactured, and impressed it upon the deed from The Ancient Order of Emethachavah to himself long after said deed had been executed under the old seal, and delivered and recorded. The C'Chief sometimes signed instruments for the corporation, "The Ancient Order of Emethachavah, by Franklin P. White, C'Chief and sole trustee," as he did in the case of the deed from himself as trustee of the corporation to himself as an

individual. He sometimes signed instruments for the corporation: "Denver Fraternity of Emethachavah, by Franklin P. White, sole trustee," as he did when he executed said notes for the purchase money of said lots. He sometimes signed instruments for the corporation: "Franklin P. White, trustee," as he did when he executed the equitable mortgage, as trustee of The Ancient Order of Emethachavah on said lots, to secure the purchase money to the grantor. The different titles assumed by him were self-confusing. He testified that he took the holy covenant degree of the order and divested himself of all property, and vested the same in the C'Chief of the corporation in trust for it. He testified that he was still a member of the order; that he had paid $10,000 in cash for these lots. When cross-examined he admitted that he had meant by that that he had paid $10,000 in to the corporation during the past seven years, and said that he paid the one dollar in cash mentioned in the deed as consideration for the lots. When quizzed by the court, he testified that he did not pay a cent; that he simply made a minute of it; that he did not see how he could hand a dollar to himself; that he was C'Chief of the corporation at the time of the trial; that, at the time he took the deed, he was sole beneficiary member of the corporation; that these lots were the only property he ever owned of a real nature. He testified that all property of the Fraternity belonged to the corporation substantially; that all of the funds of the corporation were kept in the Fraternity's name at the bank, and that all of the debts and obligations of the corporation were paid by check by the C'Chief on the Fraternity account.

The evidence is convincing that, after the incorporation of The Ancient Order of Emethachavah, the C'Chief adopted and generally used the name "Denver Fraternity of Emethachavah" as the business designation or name in which the corporation did business up until late in the year 1904, when conditions made it desirable for him to use the name "The Ancient Order of Emethachavah."

A person may adopt or assume any name in which he prefers to do business, or may consummate an individual transaction in any name he may adopt, and will thereafter be responsible in the assumed name: *Emery v. Kipp,* 154 Cal. 83, 97 Pac. 17-21, 19 L. R. A. (N. S.) 983, 129 Am. St. 141, 16 Ann. Cas. 792.

It is insisted by counsel that a homestead filing takes preference of a general lien on real estate, and we are cited to authorities holding that where the abstract of a judgment of a court of record is filed in the recorder's office as a general lien on the real estate of the judgment debtor, the general lien must give way to the proper filing of a homestead on a specific piece of property to the value of $2,000. That is quite true. If it were otherwise, the holder of a general lien might maintain the same against property many times the value of its incumbrance, and wait for years before making a levy on a specific piece of property for the satisfaction of his claim, and thereby postpone the rights of those entitled to a homestead during the continuance of his lien. However, if a lien holder neglects to subject a specific piece of property to a levy immediately upon the filing of a general lien covering all of the property of a judgment debtor, then one entitled to a homestead right may defeat his lien in part, at least, by filing a claim of homestead preceding such levy: *Weare v. Johnson,* 20 Colo. 366-67, 38 Pac. 374; *Jones v. Olson,* 17 Colo. App. 365-71, 67 Pac. 349.

The lien in this case, however, is not general, but specific and fastened upon the lots purchased and for the purchase money. Claims for purchase money on real or personal property make the equities of the holder of such claims doubly strong and such claims are usually excepted by statute from the exemption laws: 21 Cyc. 509.

Under the conditions of this record, we think it clear that these notes were intended to be, and were, the notes of The Ancient Order of Emethachavah; that the notice of vendor's lien in the deed and written agreement constituted a valid

equitable mortgage in favor of the defendant in error on the specific lots in dispute; that the notes, being those of The Ancient Order of Emethachavah, were not discharged by the order in bankruptcy discharging the plaintiff in error from the payment of his debts; and that the homestead filing of the plaintiff in error on the lots in question is subordinate to the equitable lien thereon for the purchase money.

Finding no reversible error in the record, the judgment and decree of the trial court is hereby affirmed.

*Affirmed.*