## UNITED STATES *v.* SHINN.

*(Circuit Court, D. Oregon. December 16, 1882.)*

**1. AFFIDAVIT USED UNDER TIMBER-CULTURE ACT.**
 By virtue of section 5 of the crimes act of March 3, 1857, (11 St. 250,) and section 6 of the timber-culture act of June 14, 1878, (20 St. 130,) an affidavit taken before a county clerk of this state may be used before the register and receiver in any proceeding or question arising under said last-named act in which an affidavit is allowed or authorized by any law of the United States or regulation of the land department thereof; and if such affidavit is willfully and knowingly or corruptly false in any material matter, an indictment for perjury may be maintained thereon in the proper United States court.

**2. PERJURY.**
 Swearing to a false statement is not perjury unless the matter is material to the issue, question, or purpose about or for which the statement is made, or unless it is intended and calculated to give probability to a material statement or credibility to the affiant.

3. TIMBER-CULTURE ACT—COMPLIANCE WITH.

A person entering a quarter section of public land under the timber-culture act must break not less than five acres thereof within a year after his application therefor, and cultivate the same in some annual crop the next year, or it will be deemed abandoned; and planting the five acres in timber or cuttings is not such cultivation.

Indictment for Perjury.

*James F. Watson*, for the United States.

*G. W. Walker* and *Cyrus Dolph*, for the defendant.

DEADY, D. J.   By the act of March 13, 1874, (18 St. 21,) "to encourage the growth of timber on the western prairies"—commonly called "the timber-culture act"—it is provided that any head of a family or person of the age of 21 years, etc., "who shall plant, protect, and keep in a healthy growing condition, for eight years, 40 acres of timber, the trees thereon not being more than 12 feet apart each way, on any quarter section of the public land," or in like proportion on any less legal subdivision thereof, shall be entitled to a patent therefor at the expiration of eight years, and on making proof of the facts.   A party applying for the benefit of the act must make affidavit that the "entry is made for the cultivation of timber," and on filing the same with the register and receiver, and on payment of $10, he shall be permitted to enter the quantity of land specified.   A party entering a quarter section under the act must also "break 10 acres" thereof the first year, 10 the second, and 20 the third year after the date of such entry, and "plant 10 acres of timber the second year," 10 the third year, and 20 the fourth year after such entry; and in a like proportion for any less subdivision.   If at any time after the application, and prior to the issuing of the patent for the land, the claimant shall abandon it, or fail to comply with any of the requirements of the act, the same "shall be subject to entry under the homestead laws, or by some other person under the provisions of this act;" the party making claim to said land, either "as a homestead settler or under this act," shall at the time of filing his application give such notice to the "original claimant" as may be prescribed by the land-office; "and the rights of the parties shall be determined as in other contested cases."

By the act of June 14, 1878, (20 St. 113,) this act was amended so as to require the party to plant and keep only one-fourth the number of acres in timber, and "to break or plow five acres" of a quarter section "the first year, five acres the second year, and to cultivate to crop or otherwise the five acres broken or plowed the first year;" the third year to cultivate in like manner "the five acres

broken the second year, and to plant in timber, seeds, or cuttings the five acres first broken or plowed, and to cultivate and put in crop or otherwise the remaining five acres, and the fourth year to plant in timber, seeds, or cuttings the remaining five acres;" and in like proportion for any less subdivision. Parties who had made entries under the act of 1874 are allowed by the act of 1878 to complete the same by complying with the provisions of the latter act.

On March 4, 1882, the defendant was accused by the grand jury of the crime of perjury in making an affidavit to institute a contest concerning a tract of land claimed under these acts. The defendant demurs to the indictment, for that the facts stated therein do not constitute a crime.

From the indictment it appears that on January 7, 1878, one Reuben Kinney entered, at the office of the La Grande land-district, upon application No. 77, the N. W. ¼ of section 28, in township 5 N., of range 34 E., of the Wallamet meridian, situate in Umatilla county, Oregon, under the timber-culture act of March 13, 1874, *supra;* that on January 31, 1881, the defendant made an application to the register and receiver to enter said quarter section under the timber-culture act as having been abandoned by the original claimant, and for the purpose of procuring a contest between himself and Kinney concerning the right of the latter to the premises; at the same time fi'ed an affidavit, subscribed and sworn to by himself on January 28, 1881, before the county clerk of said county, in which it was stated that Kinney had not complied with the act under which he had entered the land in these among other particulars:

"(1) That said Reuben Kinney did not, at any time within one year from the date of his said entry No. 77, break or plow five acres, or one-sixteenth, of the land covered by said claim, and did not in fact do *any* plowing upon said claim during the first year, after filing said claim; (2) that said Reuben Kinney did not, at any time during the second year, or at any time prior thereto, cultivate, by raising a crop or otherwise, five acres, or one-sixteenth, or any other portion of the land included in said claim No. 77."

Upon which perjury is assigned as follows:

" That the said affidavit is willfully false, and not according to the truth, in this: (1) The said affidavit states that the said Kinney 'did not in fact do *any* plowing on said claim during the first year after filing said claim, (meaning application 77, aforesaid,) whereas, in truth and in fact, and the defendant well knew it so to be, the said Kinney did *some* plowing on said land during the spring of 1878.' (2) The said affidavit states that said Kinney 'did not, at any time during the second year, or at any time prior thereto, cultivate,

by raising a crop or otherwise, five acres, or one-sixteenth, or *any other portion* of the land included in said claim No. 77,' whereas, in truth and in fact, and the defendant well knew the fact so to be, the said Kinney did, during said second year, cultivate the said tract of land, and did, in the month of January, 1879, plow 10 acres of said land, and, in December of said year, did harrow and cross-harrow said 10 acres, and mark the same in squares four feet apart each way, and did, during said December, plant seven acres of said ten acres to cuttings, placing one slip or cutting at the corner of each of said squares."

On the argument of the demurrer the following points were made: (1) That the county clerk was not authorized or empowered to administer the oath in question; (2) that the first assignment of perjury is upon an immaterial statement in the affidavit, and the second one does not show the falsity of the statement upon which it is made, and therefore no crime is charged in the indictment.

It was also assumed that the indictment was found under section 5392 of the Revised Statutes, which substantially provides that a person who takes an oath before a competent officer, in any case in which a law of the United States authorizes an oath to be administered, that he will testify truly, and then "wilfully and contrary thereto states any material matter which he does not believe to be true," is guilty of perjury. Doubtless this section is comprehensive enough to include this case, if the clerk of the state court was authorized by any law of the United States or regulation of the land-office to administer the oath. *U. S.* v. *Bailey,* 9 Pet. 238. The fact of its being taken before a state officer authorized " to administer oaths generally," (Or. Code of Civil Proc. § 856,) and that it was actually used in a case in which the law of the United States authorizes an oath to be used, may of itself be sufficient to bring the case within the section. *U. S.* v. *Bailey, supra.* Nor does it expressly appear that a person attempting to claim an abandoned timber-culture entry is authorized or required to file with his application therefor a statement of the facts constituting such abandonment, or, if so, to make oath thereto. But it is understood to be the practice in the land department that when one person desires to enter land under the homestead or pre-emption acts already covered by the entry of another, which he deems invalid or abandoned, that the former makes and files with the register and receiver a verified statement of the facts constituting such invalidity or abandonment, upon which such officers, if they deem the matter sufficient, "institute," as it is called, a contest between the parties, in which evidence is taken *pro* and *con,* and a decision made for or against the entry.

In 4 Copp, Land-Owner, 21, there are two decisions by the secretary of the interior under the timber-culture act (March 19 and April 2, 1877) in which the statement by the contestant concerning the entry of the other is denominated an "affidavit of contest," and recognized as a lawful and authorized part of the proceedings.

The act (section 5) authorizes the commissioner of the general land-office to make rules and regulations for carrying it into effect, and provides that contests under it shall be determined as in other cases. But the act (section 6) expressly provides that section 5 of the crimes act of March 3, 1857, (11 St. 250,) "shall extend to all oaths, affirmations, and affidavits required or authorized" thereby. The effect of this provision is to make said section 5 a part of the timber-culture act, and to provide that an indictment for perjury committed in taking an oath authorized by it must be found and is triable under said section, rather than section 5392 of the Revised Statutes. This section provides—

"That in all cases where an oath, affirmation, or affidavit * * * shall be made or taken before any person authorized by the laws of any state or territory of the United States to administer oaths or affirmations, or take affidavits, and such oaths, affirmations, or affidavits are * * * used or filed in any of the said local land-offices [of the United States] or in the general land-office, as well in cases arising under any or either of the orders, regulations, or instructions concerning any of the public lands of the United States, issued by the commissioner of the general land-office or other proper officer of the government of the United States, as under the laws of the United States, in anywise relating to or affecting any right, claim, or title, or any contest therefor, to any public lands of the United States, and any person or persons shall, taking such oath, affirmation, or affidavit, knowingly, willfully, or corruptly swear or affirm falsely, the same shall be deemed and taken to be perjury, and the person or persons guilty thereof shall, upon conviction, be liable to the punishment prescribed for that offense by the laws of the United States."

The county clerk is an officer authorized to administer oaths by the laws of this state, and the oath in question was filed and used in a local land-office of the United States in relation to a claim to a portion of the public lands, and to affect a contest for the same. Assuming, then, as I do, that this affidavit, made and used as it was, is an act or proceeding authorized or recognized by the regulations of the land department as a means of instituting a formal inquiry into the validity or abandonment of a prior entry of a tract of the public land or a contest between adverse claimants to the same, this oath is within the purview of section 5 of the act of 1857, and perjury may be assigned on it with the same effect as if it had been taken before an

officer expressly authorized by a law of the United States to administer it.

The materiality of the matter upon which the first assignment is made, and the sufficiency of the second one, remain to be considered.

The matter must be alleged to be material, or it must appear to be so upon the facts stated. Where the facts are disputed, the question should be left to the jury, with proper instructions from the court. But when the facts are admitted the question of materiality is one for the court. 1 Whart. Crim. Law, § 1284; *State* v. *Bailey*, 34 Mo. 350.

In this case the "affidavit" is alleged to have been material upon the application of the defendant to have a contest instituted to try the question whether Kinney had not forfeited his right to the land entered by him under the timber-culture act, by a failure to comply with the same in the particulars therein mentioned. But it is not alleged that any particular statement in the affidavit upon which perjury is assigned was so material, but only the affidavit as a whole. The materiality of this statement must be determined, then, by its relevancy to the inquiry or issue suggested or made by the affidavit.

The timber-culture act requires the party making an entry of a quarter section under it to break and plow five acres thereof the first year. If he breaks any appreciably less quantity,—as only four and four-fifths acres,—it is not sufficient. He has failed to comply with the act, and the land is open to entry by another. During the second year he must break and plow another five acres, and cultivate to crop or otherwise the five acres broken the first year; and to "cultivate to crop or otherwise" is not "to plant in timber, seeds, or cuttings," but to sow or plant in wheat, corn, clover, potatoes, or other annual crop which may be cultivated and harvested or gathered during the year. The word "otherwise," so far as it has any signification, must be construed in connection with the preceding words, "to cultivate," so as to limit its application to some act or process which involves, primarily, the improvement or amelioration of the soil. And it is very plain that it does not include the planting or care of timber trees, which is placed by the act in contradistinction to the cultivation of the soil, the latter being intended, apparently, as a preparation for the former.

The question concerning which this affidavit was filed and used, so far as this assignment of perjury is concerned, is this: Had Kinney complied with the act, during the first year after making his entry, by breaking five acres of the land during that period? The affidavit states that Kinney did not plow five acres the first year, and adds

that, in fact, he did not plow any portion thereof during said period. The indictment alleges that the latter statement is false, because Kinney did do "some" plowing during the first year, and thereby impliedly admits that he did not plow five acres in that time.

Of course, the statement that Kinney plowed no portion of the land during the first year, taken unqualifiedly, was material to the inquiry, because it is at least equivalent to saying that he did not plow five acres. But it is negatived and falsified by the indictment in a narrower sense, as that he did not plow "some" portion of the land, which may be not more than a single furrow. But the inquiry or issue was not whether Kinney had plowed "some" of the land during the first year, but whether he had plowed as much as five acres of it. The plowing of any less quantity was altogether immaterial, and the statement, taken in the sense that he did not plow "some" portion of the premises, was irrelevant and superfluous.

A conviction cannot be had upon an assignment of perjury unless it be on a matter material to the issue. For instance, if the question is whether certain goods have been paid for or not, and a witness testifies that they have, and on a particular day, and in fact the goods were paid for, but on another day, this is not perjury, because the day was not material, but only the payment. But when the superfluous or collateral matter is calculated and intended to prop and bolster the testimony of the witness on some material point, as by clothing it with circumstances which add to its probability or strengthen the credibility of the witness, the case is otherwise. But when the alleged false oath only goes to a fact, the existence or non-existence of which cannot affect the question in dispute, then it is not perjury. The administration of the law is not impeded or affected by it. 1 Whart. Crim. Law, §§ 1276, 1277; *Plath* v. *Braunsdorf*, 40 Wis. 111; *State* v. *Bailey*, 34 Mo. 350; *Pollard* v. *People*, 69 Ill. 153; *State* v. *Aikens*, 32 Iowa, 403.

As the matter on which the first assignment is made, and the sense in which it is negatived, was not directly material to the inquiry in which the affidavit was used, nor in any way calculated to strengthen or make more probable the material statement therein that the full five acres had not been plowed, it must be held immaterial, and the indictment so far bad.

As to the second assignment, it is insufficient because it does not appear therefrom that any statement of the affidavit is false. The defendant swore that Kinney did not, during the second year, cultivate, by raising a crop or otherwise, five acres of the land, nor any

other portion of it. The last part of this statement is immaterial, as nothing less than the cultivation of the full five acres is a compliance with the act.

But the indictment does not show the falsity of any part of the statement. True, it alleges generally that the statement is false, but proceeds to state wherein and why, and in so doing impliedly admits its truth. The statement is false, says the indictment, because Kinney plowed and harrowed ten acres of the land during the second year, and near the close of it planted seven of such acres in "cuttings" four feet apart each way. But this is not the cultivation of the five acres to a crop, as required by the act, and therefore these facts do not negative or contradict the affidavit.

From this it only appears that Kinney broke ground and planted "cuttings" during the second year, and not that he cultivated five acres of the land as he was bound to do.

The demurrer is sustained.