## UNITED STATES v. NIEMEYER et al.

### (District Court, E. D. Arkansas. April 27, 1899.)

1. **PUBLIC LANDS—CUTTING OF TIMBER—RIGHTS OF HOMESTEADER.**

    A homesteader, before he has become entitled to a patent to the land, is not authorized to sell timber therefrom for the purpose of obtaining money with which to hire improvements made which the law contemplates he shall make himself. He has no right to sell timber for any purpose from any part of the land except such as he intends in good faith to put into immediate cultivation; and a use of the land for grazing purposes, without plowing it up, is not cultivation, as meant by the law.

2. **SAME—CRIMINAL LIABILITY FOR CUTTING TIMBER—INTENT.**

    If a person cuts and removes timber from lands which he knows to belong to the United States, and to be occupied under a homestead claim, under a purchase or license from the homesteader, and knowing also that the land from which it is taken is not to be put into immediate cultivation, he is presumed to have intended to take the timber unlawfully, and is subject to prosecution therefor.

This was a prosecution by the United States of A. J. Niemeyer and Charles Niemeyer for unlawfully cutting and removing, or causing to be cut and removed, timber from public lands of the United States.

The defendants were, respectively, president and general manager of the Saginaw Lumber Company, located near Malvern, Ark. They justified the taking of the timber under purchases from homesteaders occupying the lands from which it was cut. The government attacked the good faith both of the homesteaders and the defendants, claiming that the homestead entries were made for the purpose of enabling the defendants to obtain the valuable timber from the lands. There was evidence that three of the homestead entrymen were employés of the lumber company, and that the fourth made his entry at the instance of the defendants. There was also evidence that none of the lands had been put in cultivation, or cleared for cultivation.

Jacob Trieber, U. S. Atty.

L. A. Byrne, for defendants.

WILLIAMS, District Judge (orally charging jury). This is a trial for the offense of cutting, or causing to be cut, and hauling away, or causing to be hauled away, timber from the lands of the government. The defense is that the lands were homesteads, and that the timber was disposed of by the homesteaders to the parties who are charged with unlawfully having it cut. The case is out of the ordinary run of cases of this kind. It may not require any more consideration at your hands, however, because the testimony is plain, and the law at last is simple. The court will endeavor to make the law plain to you which is to govern you in making up your verdict in this case. The homestead laws of the United States are exceedingly munificent

laws, and were intended for the benefit of the citizens of the United States, for the bettering of their condition, and consequently the making of better citizens of them. These laws were passed after mature deliberation by congress, and after one or two ineffectual attempts to pass them. They were passed in the light of other land laws, and of the condition of the citizens who had availed themselves of the other laws. Before the homestead laws, there were preemption laws, and any one could go upon any unoccupied lands of the United States that were not in the market, and, by pre-empting, as it was called, get the first right to bid upon the lands or buy them whenever they came into the market. The congress of the United States, as I have told you, after that passed the homestead laws, which permit and encourage every citizen of the United States, or any one who has declared his intention to become a citizen, who in good faith—and that is always an important part of it—who in good faith intends to make a home for himself and his family, to go upon any 160 acres of vacant lands belonging to the government, and live upon it, cultivate it, and, after he has lived upon it continuously for five years, he may have a patent to it, which gives him the land in fee simple. The congress of the United States, or the government of the United States, as I may say, having passed a law of this kind giving to the citizen the land, certainly has a right to prescribe how he shall occupy it until his five years of continuous residence has given him the title. It has by law and by the decisions of the highest courts prescribed rules and regulations to govern his conduct while in this occupancy for the five years. Upon going upon the land after first getting his proper papers from the local land offices, he may use timber growing upon that land for the purpose of building a house upon it, and outhouses that are necessary. He may use timber for making rails to fence in the land, in order to put it into cultivation, and he may use enough for his firewood. The law goes further than that in its munificence, according to the decisions of the courts of the United States, and says that where the man in good faith has taken up a homestead, and is in good faith clearing up a part of it to put it into immediate cultivation, if there is more timber upon that piece of ground than has been necessary for the building of his house, his outhouses, his fences, and his firewood, the law does not say that he must burn it, but he may sell it; not off of the entire tract of land, but from the piece of land that he is going to put into immediate cultivation. It is immediate cultivation, not two years or three years thence, but immediate cultivation; the supreme court using a very apt phrase by saying, "Upon the ground where the plow is to follow the ax." Not only may he sell the timber from that piece of ground, but he may exchange it for lumber; that is, the timber from the piece of ground he is putting into cultivation.

Now, much of the testimony in this case is to the effect that the so-called "homesteader" sold the timber for 50 cents a thousand, took lumber in exchange, and paid for the hire of the carpenters who put up the house, and paid for digging wells, and all that sort of thing. The law does not authorize that. I said to you before that congress passed this law having in consideration the customs and

conditions of the men who had taken up pre-emption claims upon the vacant lands of the United States. It did not contemplate, and this law does not authorize, a man to take up a homestead, and sit down upon it, and do nothing, sell the timber off of it, hire men to put up a house, hire men to make the rails, hire men to cut the firewood that he burns, hire men to do everything that is done about the place, and pay for it with the timber on the place. The homesteader is expected to do something himself. The government gives him the timber to build his house, make his rails, and to keep himself comfortable in cold weather by the firewood that he cuts himself, or that he does himself; not that he hires this one and that one to do by giving them other timber from the lands to pay for these things being done. It is a question of good faith between the homesteader and the government. That question is at the very beginning of it. If you find that these men went upon the land without any intention of making it a homestead, or of making a homestead out of it, and if you find that the circumstances shown by the proof and by their conduct at the time and after that time show that they did not intend to make a homestead of it, then they had no right to do anything upon the land whatever. Every stick of timber that they would cut would be a violation of the law. It is a question of going upon the homestead in good faith, to make a home of it. On the other hand, if you find they did intend to make a home of it, then they could cut the timber and use it to the extent that I have told you, and no other. If they could not cut it themselves, they could not authorize any one else to do it; and any one else who does it under any supposed authority from the homesteader violates the law, and is amenable to the law.

Much has been said about the question of intent in this case. There must be an intention, of course, to violate the law and deprive the government of this timber; but the court calls your attention to the fact that all persons are presumed to intend the natural result of their acts. And if you find that these defendants, or any one of them, knew the condition of these lands, that they were recently homesteaded, and that the timber they obtained permission to cut was cut off of lands not put in cultivation, not going to be put in cultivation, from the very nature of things, the law says that they intended to take it unlawfully. The defendants are entitled to the benefit of all reasonable doubt that may arise upon the whole testimony in the case to the extent that, after hearing all the evidence and weighing it, you are satisfied beyond a reasonable doubt that they are guilty, it is your duty to say so; but, if you still have a reasonable doubt of their guilt. it is your duty to acquit. If, after weighing all the evidence, you are satisfied beyond a reasonable doubt—have an abiding conviction—that they are guilty, it is equally your duty to say that they are guilty. And when I say a reasonable doubt, gentlemen, I mean a doubt arising upon the testimony, not from something outside. I do not mean any far-fetched, illogical, supposititious doubt, but a reasonable doubt; such a doubt as would prevent you from acting in the most important affairs of your lives. This is the kind of a doubt to which the defendants are entitled to the benefit of. You are the sole judges of the testimony, giving it such weight as you think

it is entitled to. You are not authorized to discard the testimony of any witness unless you see some reason for doing so. If there be a conflict of testimony, it is for you to say which is true and which is false. In arriving at a conclusion as to the credibility or reliability of witnesses, you may take into consideration the knowledge they have of the matters about which they testify, and any interest they may have in the result of your verdict. There has been testimony introduced in regard to some other homestead. The court has permitted that simply to show the intent, if it showed any. But you are concerned only about the timber taken from these four homesteads, none other. If you find the defendants guilty, I understand that the value of the timber is not a debatable question. It is admitted that so many thousand feet of timber were taken from these homesteads, at 50 cents per thousand. But it is at last for you to say how much it was. You are the judges of that, also, from the testimony in the case.

The court calls your attention again to the question of the land being put in cultivation. Cultivation means cultivation. Making a stock farm or stock range of land is not putting it into cultivation. Fitting it for grazing, cutting the trees for the purpose of putting it in condition for grazing purposes, is not putting it in cultivation. That is not what the law contemplates when it says cultivation. It means plowing and preparing it for crops, or the raising of something that grows from the ground, besides grass. You are to take this case, gentlemen, and decide it according to the evidence that has been adduced here by the witnesses, weighing all the circumstances, weighing all the evidence, and taking the law as now given you by the court. You will decide it without prejudice or passion, fairly and in accordance with the law and the evidence. If you find both the defendants guilty, you will say so. If you find one not guilty and the other guilty, you will say so. If you find both not guilty, you will say so by your verdict. You will retire, and consider your verdict.

There was a verdict of guilty.