## HILL v. UNITED STATES.
### No. 384.

Circuit Court of Appeals, Tenth Circuit.
Dec. 23, 1931.

William M. Bradshaw, of Topeka, Kan., and W. E. Atchison, of Conway, Ark., for appellant.

S. M. Brewster, U. S. Atty., and Dan B. Cowie, Asst. U. S. Atty., both of Topeka, Kan., and John E. Haltigan, Regional Atty. for Veterans' Bureau, of Washington, D. C., for the United States.

Before LEWIS and McDERMOTT, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge.

Hill has appealed from a conviction of perjury, as defined by the Act of June 7, 1924, 43 Stat. 607, 628 (38 USCA § 421 et seq.). Section 501 of the Act (38 USCA § 552) is this:

"That whoever in any claim for compensation, insurance, or maintenance and support allowance, or in any document required by this Act, or by regulation made under this Act, makes any sworn statement of a material fact knowing it to be false, shall be guilty of perjury and shall be punished. * * * *"

Recitals in the indictment, by way of inducement, are to the effect that Ben Thomas, a soldier in the World War, died in the service on December 20, 1919, holding at the time War Risk Term Insurance to the amount of $10,000.00 which matured on his death; that his wife, Alberta, was named as beneficiary, but payment to her was denied by the Veterans' Bureau because of her character; that Pandora Wilson, née Thomas, of Tiller, Arkansas, was a sister to Ben Thomas; that Robert L. Hill made representation to the United States Veterans' Bureau at Washington, D. C., by certain correspondence and affidavits, that Pandora Wilson, née Thomas, was making a claim for her share of said insurance. And the indictment charges that Robert L. Hill made a sworn statement of a material fact, knowing it to be false, to-wit: a false affidavit as to a material fact knowing it to be false, and submitted said affidavit to the United States Veterans' Bureau in connection with said claim, to-wit:

"(Affidavit)      C.327.626
                  Ben Thomas
                  Deceased.
"State of Kansas, County of Shawnee, ss.

"We, the under signns both being of lawful age first being durly sworn according to law upon our oath despose and say that they are the ones who executed form no 541. during nov. 1925, in which was stated that one Brother whose address at that time was unknown. these affiants believing Pandora Thomas was dead she had gotten shot shortly before the execution of the form no 541. nov. 1925.

"But the said Pandora Thomas recovered and are still alive and are making claim for the insurance. after A decision of the Bureau deneying Payments to the widow of the deceased. form No 541 above mention was executed in favor of A claim on account of Alberta Thomas.

                  "Robert L. Hill.
                  "Z. I. Epps.
"Subscribed and sworn to before me this 19 day of march, 1927.
                  "James Talty,
"[Seal.]           Notary Public.
"My commission expires July 17th, 1930."

The indictment then proceeds:

"And the grand jurors do further find that said sworn statement with reference to said insurance was false as to material facts and was known by said Robert L. Hill to be false as to material facts in that said Pandora Wilson née Thomas never made any claim for said insurance. *. * * *"

This is followed by other averments of falsifying matter not found in the affidavit supra, so they were ignored by the court in submitting the case to the jury. The only statement in the affidavit as constituting perjury, submitted to the jury, was that part of the second paragraph reading thus, "But the said Pandora Thomas * * * are making claim for the insurance;" the court in its instructions to the jury saying:

"And if the defendant, Robert L. Hill, made the sworn statement as alleged in the indictment to the effect that Pandora Thomas was making a claim for the insurance in question, if she did not make such a claim, and if you are convinced beyond a reasonable doubt that Robert L. Hill made such a sworn statement, then it should be your duty to return a verdict of guilty against the defendant, Robert L. Hill, if you find beyond a reasonable doubt that the said Robert L. Hill did make such a sworn statement knowing it to be false and knowing it to be a fact that the said Pandora Thomas had not made any such claim for insurance."

Assuming for the moment that the indictment charged the offense of perjury, it was indispensable that the prosecution establish that Pandora had never made claim for the insurance, as charged in the indictment.

She was a witness for the prosecution. She was not asked and did not testify, nor did any other witness testify that she had never made such a claim; nor was there proof that defendant's affidavit was ever presented to the Veterans' Bureau. There was documentary proof, by exhibits, the contents of which are set forth by way of recitals in the record, but none of those recitals embody statements tending to establish the aforesaid fact, that Pandora had not made claim. Some of these exhibits purport to be letters, some affidavits, and some assignments of interest in the insurance. As to some of them, no date of execution is given; as to others, they are of dates after the date attached to the affidavit set up in the indictment, and some are prior to that date. There is no proof that any of them were ever presented to the Veterans' Bureau. It would thus seem that the prosecution failed to sustain the charge by proof.

But there is a more serious objection. The defendant filed a motion to quash the indictment on the ground that it failed to state facts constituting an offense against the United States. The motion was overruled over objection and exception. We think the court erred in that ruling. As stated, perjury as charged consisted in that part of the affidavit reading, "But the said Pandora Thomas * * * are making claim for the insurance." That statement is alleged to be false as to a material fact "in that said Pandora Wilson née Thomas never made any claim for said insurance."

The Act of June 7, 1924, invests the Director of the Veterans' Bureau with quasi-judicial power. Section 5 (38 USCA § 426) in part is this:

"The director, subject to the general direction of the President, shall administer, execute, and enforce the provisions of this Act, and for that purpose shall have full power and authority to make rules and regulations, not inconsistent with the provisions of this Act, which are necessary or appropriate to carry out its purposes, and shall decide all questions arising under this Act and all decisions of questions of fact affecting any claimant to the benefits of Titles II, III, or IV of this Act, shall be conclusive except as otherwise provided herein. * * * The director shall adopt reasonable and proper rules to govern the procedure of the divisions and to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits of compensation, insurance, vocational training or main-

tenance and support allowance provided for in this Act, the forms of application of those claiming to be entitled to such benefits, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards."

This section has not been changed in substance by amendments. Under the power given to the director by said section, he prescribed a form of application to be made by anyone claiming such insurance. As revised in December, 1926, it is known as form 514, and is still in use so far as we have been able to ascertain. It is printed with blanks to be filled out. It requires the applicant to state his postoffice, his belief that he is the beneficiary of the insurance granted to the soldier naming him, that he has been informed that the soldier died on a named day, the cause of his death, whether or not he left a last will, the date of the applicant's birth, the relation of the applicant to the soldier, whether the applicant be the widow or widower (or other relative) of the deceased, how many times the insured and how many times the applicant had been married, and if either had been previously married to file a certificate of the death of the deceased spouse of the former marriage or a certified copy of the divorce decree. Additional facts as to other surviving relatives of the deceased are required to be stated in the application. The application must be signed and sworn to by the applicant, and it must be supported by the sworn statement of two witnesses to the effect that they are well acquainted with the beneficiary, and that they know the beneficiary to be the widow (or other relative) of the deceased soldier. This constitutes the formal claim of the beneficiary on which proof may be taken.

The April, 1923, Edition of Manual of Procedure on Insurance for District and Subdistrict Offices, prepared and issued by the Veterans' Bureau, contains this:

"Insurance Claims. Upon the death of a person carrying term insurance, affidavit in support of insurance claim (Form 514-Revised) * * * must be submitted by the beneficiary."

Circular No. 464, issued January 12, 1928, by the Bureau contains this, sub. b. of paragraph 4:

"Formal Claims.—Every claim for insurance benefits by reason of death of the insured requires the execution by the beneficiary of Bureau's form 514. * * *"

The indictment charges that Pandora never made any claim for said insurance. Then

there was nothing pending before the Bureau when the affidavit was made by defendant on which the director could act; therefore, the affidavit on which perjury is charged stated a wholly immaterial fact. The statute upon which the indictment is based requires that the statement charged as perjury must be the statement of a material fact; and that is in consonance with the general rule on the subject. Indeed, we are unable to see the materiality of the statement even had Pandora theretofore filed an application in accordance with said form 514, contrary to the charge, because under those conditions also the charge of perjury would have been a statement of an immaterial fact.

■ Again, there is no averment that James Talty had competent authority to administer the purported oath, as appears in the affidavit supra. This averment seems to be a necessary one under the statute, which abbreviates the common law form of indictment for perjury and sets forth the substance of what it shall contain. U. S. Code, title 18, § 558 (18 USCA § 558).

The propositions supra seem so elementary in criminal law they need no citation of authority. 48 C. J., p. 832; 22 Am. & Eng. Ency. of Law, p. 686.

Reversed with directions to vacate the judgment, sustain the motion to quash, and discharge the defendant.