## ROBINSON v. UNITED STATES.
### No. 7550.

United States Court of Appeals for the

District of Columbia.

Decided June 17, 1940.

James J. Laughlin, of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., and William S. Tarver, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before STEPHENS, MILLER, and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted in the lower court of the crime of perjury, in that he falsely stated under oath, in an application for a marriage license, that his name was Aflonso P. Mattison, and that he had had no prior marriage. A copy of the application for marriage license, in which the false statements were made by appellant under oath, was introduced into evidence in the court below and is set out in the margin.[1] It appears clearly from this application and from other evidence in the record that both statements were made by appellant under oath, and that both were false. Appellant's name is, as charged in the indictment, Wil-

---

1 "Application for Marriage License (Please print names)

I, *Aflonso P. Mattison* hereby apply for a license for the marriage of the following named persons, the ceremony to be performed by Rev. *G. Ellington Stevenson.*

Full name of groom: *Aflonso Preston Mattison.*

Age: *34.*

*Colored.*

Kinship between bride and groom: *None.*

Former marriages: *None.* How terminated One, two, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Death or divorce

Legal residence: *Ruthford, North Calinia.* Street, city, and State

*1406 Swan St., N. W.*

Full name of bride: *Thelma Mooney.*

Age: *31.*

Color: *Colored.*

Former marriages: *None.* How terminated One, two, etc. nated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Death or divorce

Legal residence: *112 E. Bradley Lane,* Street, city, and State

*Ch. Ch., Md.*

[The matter in italics was filled in by the applicant]."

476

liam F. Robinson, not Aflonso P. Mattison, Appellant had been married twice before at the time he falsely stated that he had had no former marriages.

Appellant admits that both statements were false and relies for a defense merely upon a denial of their materiality. He cites cases in support of this proposition which interpret statutes defining perjury, which statutes, in turn, require that the false statement must be material.[2] The District of Columbia Code contains a similar statute,[3] with a similar requirement as to materiality. But the District Code provides further, with specific relation to the situation of the present case, as follows:[4]

"*Duty of clerk.*—It shall be the duty of the clerk of the supreme court [now the District Court of the United States for the District of Columbia] before issuing any license to solemnize a marriage to examine any applicant for said license under oath and to ascertain *the names,* ages, and color of the parties desiring to marry, and if they are under age the names of their parents or guardians, *whether they were previously married,* whether they are related or not, and if so, in what degree, which facts shall appear on the face of the application, of which the clerk shall provide a printed form, and *any false swearing in regard to such matters shall be deemed perjury.*" [Italics supplied]

█ It is apparent that the purpose of Congress in enacting this latter section was to leave no doubt, or room for interpretation, as to whether or not the information required to be given on such applications was material. *Any false swearing in regard to such matters shall be deemed perjury.* The reason for this provision is also easily apparent. The law of the District prohibits, among others, the marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or by a decree of divorce.[5] In order to guard against the celebration of such marriages, as well as for the purpose of preserving the evidence of marriages in the District,[6] careful provision is made as to persons who may or may not celebrate marriages,[7] and the conditions under which they shall be celebrated.[8] Thus, it is required that no marriage shall be celebrated unless a license shall first have been issued by the clerk and delivered to the person authorized to celebrate the same;[9] and the duty is imposed upon the clerk,[10] before issuing a license, to examine each applicant under oath concerning specified, pertinent facts, in order to provide a basis upon which to exercise the discretion thus vested in him.

█ It is obvious, therefore, that appellant's false statements were material; whether tested by the requirements of the statute which defines perjury, generally, or by the requirements of the statute which defines it in terms of false swearing by an applicant for a marriage license. The ultimate test in either case is whether such statements had a natural tendency to influence the clerk in his investigation of the facts, in the exercise of his official discretion,[11] and in the administration of the

[2] Hill v. United States, 10 Cir., 54 F.2d 599, 602; State v. Baldwin, 109 Vt. 143, 194 A. 372; People v. Planer, 23 Cal. App.2d 251, 72 P.2d 767; People v. Macken, 32 Cal.App.2d 31, 89 P.2d 173; State v. Evans, 229 Wis. 405, 282 N.W. 555.

[3] D.C.Code (1929) tit. 6, § 131: "*Perjury; subornation of perjury.*—Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath or affirmation states or subscribes *any material matter* which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years. Any such false testimony, declaration, deposition, or certificate given in the District of Columbia, but intended to be used in a judicial proceeding elsewhere, shall also be perjury within the meaning of this section." [Italics supplied]

[4] D.C.Code (1929) tit. 14, § 9.
[5] D.C.Code (1929) tit. 14, § 1.
[6] D.C.Code (1929) tit. 14, § 6.
[7] D.C.Code (1929) tit. 14, §§ 6, 7.
[8] D.C.Code (1929) tit. 14, § 8.
[9] D.C.Code (1929) tit. 14, § 8.
[10] D.C.Code (1929) tit. 14, § 9.
[11] Carroll v. United States, 2 Cir., 16 F.2d 951, 953, certiorari denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; Woolley v. United States, 9 Cir., 97 F.2d 258, 262, certiorari denied, 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391; Fields v. State. 94 Fla. 490, 114 So. 317.

law.[12] That they had such a tendency there can be no doubt. One of the most vital considerations of all, in such an investigation, is whether either of the applicants had been previously married. And there could be no more effective method of concealing a falsification of the facts than the use of a fictitious or assumed name.

Considerations of public policy require that no unnecessary obstacles or delays shall be placed in the way of persons matrimonially inclined. For that reason, if for no other, therefore, the law requires merely truthful answers to a few simple questions as a prerequisite to the celebration of marriage. But the safeguard of the law is found in the severe penalty which is imposed for false answers. Public policy is also concerned with the prevention of prohibited marriages, and if one who comes within the prohibited class, or one who is uncertain whether or not he comes within such class, chooses to give false answers to those simple questions, then he must pay the penalty.

Appellant contends, in effect, that it was proper for him to give a false answer to the question concerning former marriages because (1) in his opinion he was not "legally married;" (2) if he was not legally married then he was free to contract another marriage; (3) therefore, his false statement was not material. But we need not pass upon appellant's contention in this respect because the record shows that there was still another former marriage, concerning which his answer was palpably false. This, together with his deliberate and willful falsification as to his name, is the best evidence of his own lack of conviction concerning the contention which he now urges. He confessed to the police that he knew the statements he made upon the application were not true; he testified on cross-examination that he had been previously convicted of bigamy in Rhode Island; and he told a police officer that he used the name Mattison, in applying for a marriage license, because he had been convicted of bigamy in Rhode Island under the name of Robinson, and did not want that fact known.

■ In support of his contention that giving an assumed name was not a material, false statement, appellant cites cases to support the proposition that a person may lawfully change his name.[13] No one would question that proposition, standing alone. In fact, the District of Columbia Code provides the method by which such a change may be made.[14] But an entirely different situation arises when a person changes his name to conceal his identity,[15] or to accomplish a fraudulent purpose.[16] This was the situation of the present case.

Affirmed.

---

[12] United States v. Shinn, C.C., D.Ore., 14 F. 447, 453.

[13] Linton v. First Nat. Bank, C.C., W. D.Pa., 10 F. 894.

[14] D.C.Code (1929) tit. 24, §§ 351–353.

[15] In re Zanger, 266 N.Y. 165, 172, 194 N.E. 72, 75: "The name of a person like the name of a thing serves merely to identify him. For honest purposes a person may, if he choose, assume a new name * * * but * * * A witness may not impersonate another person nor conceal his own identity. A name assumed for such purpose is then a masquerade or mask. Assumption of the name of another for such purpose or where it may have such effect constitutes deceit, and an attorney who abets such deceit is guilty of gross professional misconduct."

[16] United States v. McKay, D.C.Nev., 2 F.2d 257, 259: "Under the common law a man can change his name at will, provided it is not done with a fraudulent purpose; * * *." [Italics supplied] The King v. The Inhabitants, 3 M. & S. 250, 257, 259.