MILLER v. RICHEY et al.

No. 6056.

Court of Civil Appeals of Texas. Texarkana.

May 13, 1943.

Rehearing Denied July 15, 1943.

Wynne & Wynne and Philip Brin, all of Longview, and W. T. Williams, of Austin, for appellant.

W. Edward Lee, of Tyler, and Florence, Florence & Meredith, of Gilmer, for appellees.

HALL, Justice.

This action is one in trespass to try title instituted by appellant, hereinafter called plaintiff, against appellees, hereinafter called defendants, to .25-acre of land in Gregg County. Defendants answered by general denial, plea of not guilty, and asserted title under the 3, 5, 10 and 25-year statutes of limitation. Plaintiff by supplemental petition answered defendants' claim of title by limitation and alleged that neither of defendants nor "those under whom they hold, have had peaceable, continuous, and adverse possession of the lands described in plaintiff's petition, cultivating, using or enjoying the same and paying all taxes thereon prior to delinquency, under deeds duly registered and recorded in the Deed Records of Gregg County, Texas, for more than five years after plaintiff's cause of action accrued.

"Plaintiff further shows to the court that the land herein sued for is entirely surrounded by a tract or tracts of land owned, claimed or fenced by the defendants herein; that it has not been fenced separately from said adjoining tract or tracts, nor has the land herein sued for, nor as much as 1/10 thereof, been cultivated and used for agricultural or manufacturing purposes."

Trial before the court resulted in a judgment that plaintiff "recover nothing" against defendants.

The contest on appeal concerns only the 1/8 royalty interest. By stipulation filed, the parties request that the judgment of the trial court be affirmed as to the 7/8 leasehold estate.

We shall first discuss plaintiff's Point 2, which is: "Error of the trial court in holding that York's acquiescence in a fence along the established, recognized and undisputed boundary between his land and tract sold off the north end thereof to Richey, the location of which Richey tract had never been disputed, and which Richey tract lay between the aforesaid York tract and the land in controversy herein, operated to estop York and his assigns to

claim ownership of the land in controversy, farther beyond the Richey tract and nowhere contiguous to the acquiesced line, and not included nor described in the deed to the Richey tract."

The following sketch illustrates the contentions here presented. The shaded portion containing .25 acre is the land in controversy.

(The fence mentioned in above proposition and discussed below runs along line AD in sketch).

 In 1912, W. H. York conveyed to G. W. Richey tract ABCD, describing it as follows: "Beginning at the Northeast corner of the J. K. Armstrong homestead tract of land; Thence North 50 yds. to stake for corner; Thence East 75 yds. to Moody Creek; Thence with the meanderings of said creek South to a point on said creek directly East from the said J. K. Armstrong's North East corner; Thence West 68 yds. to the place of beginning." This description falls short by 42 feet of the South line of Richey's land lying to the North, thus leaving the tract in controversy between the land actually conveyed to him on the South by York and his land on the North. No contention is made here with respect to the location or description of tract ABCD. The trial court found as a fact that: "Richey, however, paid York the full purchase price asked by York for the land North of this fence, and, in fact, York thought that the description covered by the conveyance in 1912 actually included the tract of land involved in this controversy. Richey and York together maintained for more than 28 years the fence (A to D) which York had built from Armstrong's Northeast fence corner to Moody Creek as a common or partnership fence between them, and the fence is still

there. The tract of land in controversy lies North of the fence and W. H. York claimed no part of the land north of this fence until sometime in March 1940." The trial court concluded "that W. H. York acquiesced in, agreed to and recognized the partnership fence existing from J. K. Armstrong's Northeast corner, East to Moody Creek (line AD on the sketch), and so recognized said fence as the boundary line for approximately 28 years, and the said W. H. York and his assigns are now precluded, as a matter of law, from asserting ownership in said tract situated North of said boundary line." But the trial court also found as a fact "that during all the time said fence was maintained between the York land, on the South, and the Richey 'one-acre' tract (ABCD) aforesaid, described in the York deed to Richey, said separately described Richey's 'one-acre' tract, about the ownership of which there has never been any dispute between the parties, has intervened between said fence and the land in controversy in this cause." There is not now, nor has there ever been, any dispute with respect to the location on the ground of line AD. As stated by defendant Richey, it was not only recognized by both him and York as the dividing line between his tract on the North (ABCD) and York's land on the South, but "it is the line." It is conceded by all parties that the field note description of tract ABCD does not include the shaded area in controversy and Richey's claim of title to the land in controversy must emanate from some source other than the deed to tract ABCD. We think it clear from this record that the land in dispute must be considered as a separate tract. The established line AD forms no part of the boundary of the .25-acre tract. As found by the trial court, the 167-acre tract (ABCD) lies between the land here involved and York's land to the South. For an agreed line to fix the true boundary between two tracts of land, it must be contiguous to each of said two tracts and form the dividing line between them. Snyder v. Magnolia Pet. Co., Tex.Civ.App., 107 S.W.2d 603, writ dismissed. This point is sustained.

 Plaintiff's Point 1 is: "The error of the trial court in concluding that appellee Richey perfected title under the ten years statute of limitation by two years cultivation and eight years use as pasture and meadow, without a separate enclosure."

The trial court's conclusions of law No. 3 and No. 4 are:

No. 3. (Evidently meant as a finding of fact): "The court concludes as a matter of law that the tract of land in dispute was completely surrounded by land owned by the said G. W. Richey and, further, that said tract of land was not segregated from the other tracts by a separate fence surrounding it."

No. 4. "The court further concludes as a matter of law that the tract in dispute together with other tracts belonging to the said G. W. Richey, were all under one fence, and insomuch as the tract in dispute, or more than one-third of same, was under cultivation for two years and subsequently converted into a pasture and meadow for cattle for more than ten years, the court concludes that G. W. Richey acquired title to the tract in question by virtue of the ten year statute of limitation."

The legal basis for this point is R.C.S. Art. 5511, which reads: "A tract of land owned by one person, entirely surrounded by a tract or tracts owned, claimed or fenced by another, shall not be considered inclosed by a fence inclosing the circumscribing tract or tracts, or any part thereof; nor shall the possession by the owner or claimant of such circumscribing land of such interior tract be the peaceable and adverse possession contemplated by Article 5510 unless the same be segregated and separated from the circumscribing land by a fence, or unless at least one-tenth thereof be cultivated and used for agricultural purposes, or used for manufacturing purposes."

As said before, the tract of land in controversy is not included within the field note description conveying tract ABCD. It is entirely surrounded by lands belonging to defendant Richey, is not set apart nor segregated from his other lands by fence, neither is any part of same used for manufacturing purposes. Therefore for the defendants to sustain title to this land by force of the 10-year statute of limitation (R.C.S. Art. 5510), under the facts as found by the trial court, they must, in addition to showing compliance with R.C.S. Article 5510, establish by sufficient proof a compliance with R.C.S. Art. 5511, set out above. The findings of fact by the trial court that more than ⅓ of the tract in controversy "was under cultivation for two years and subsequently converted into a pasture and meadow for cattle for more

than ten years" does not show sufficient compliance, in our opinion, to meet the requirements of R.C.S. Art. 5511 that "at least one-tenth thereof *be cultivated and used for agricultural purposes*." (Italics ours.) The word "cultivate" is defined by Century Dictionary to mean: "to till; prepare for crops; manure, plow, dress, sow and reap; manage and improve in husbandry." In the case of United States v. Niemeyer, D.C., 94 F. 147, 150, the word "cultivation" as used in the U. S. homestead law is defined: "Making a stock farm or stock range of land is not putting it into cultivation. Fitting it for grazing, cutting the trees for the purpose of putting it in condition for grazing purposes, is not putting it in cultivation. That is not what the law contemplates when it says cultivation. It means plowing and preparing it for crops, or the raising of something that grows from the ground, besides grass." To the same effect is United States v. Shinn, C.C., 14 F. 447. In American Emigrant Co. v. Rogers Locomotive Machine-Works, 83 Iowa 612, 50 N.W. 52, it is said: "But by the cultivation of land is ordinarily understood something more than the gathering of crops which grow spontaneously, or with little care." In Vergara v. Myers, 239 S.W. 942 and Vergara v. Kenyon, 261 S.W. 1009 (both by Commission of Appeals), R.C.S. Article 5511 is upheld and applied to lands used for grazing purposes. In our opinion this point must be sustained.

We have concluded also that the facts in this record are not sufficient to work an estoppel against York nor to establish a parol sale of the land here in controversy by him to Richey.

It is our opinion that the judgment of the trial court should be reversed and here rendered for plaintiff, and it is accordingly so ordered.

### On Motion for Rehearing.

Appellee in his motion for rehearing insists that the judgment of the trial court is sustainable on the theory of the parol sale of the land in controversy from York to Richey; that Richey having paid the consideration agreed upon, taken exclusive possession of the land with York's consent and made permanent and valuable improvements upon same, the judgment in his behalf of the trial court was proper. Both York and Richey testified that the full purchase price for the land had been

494

paid by Richey and that Richey went into possession of the land and has continued in possession since. The evidence also shows that Richey straightened out a bend in the creek upon a portion of the land in controversy, filled it in with logs and brush so that he was later able to cultivate over it; that he cleared a portion of the land and after he ceased cultivating it put it into pasture and meadow. There is nothing in the record to show the value, if any, of such improvements. This evidence, in our opinion, is not sufficient to support the issue of permanent valuable improvements so as to remove this case from the application of the statute of frauds. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and authorities there cited.

The motion for rehearing is overruled.